[Crim. No. 76.    In Bank.—March 1, 1897.]

## THE PEOPLE, RESPONDENT, *v.* JEROME A. BUCK-LEY, APPELLANT.

CRIMINAL LAW — ALTERING OFFICIAL RETURNS — COMPARISON OF HAND-WRITING OF FIGURES — INSUFFICIENCY OF EVIDENCE.—Upon the trial of a defendant accused of altering the official returns of an election, where the only evidence adduced against him consists of the comparison of handwriting written by him in a state of excitement, with altered figures in the returns, and where no other single suspicious circumstance, or any motive or opportunity for the crime was proved against him, but it was shown without contradiction that he never had the package in his hands, and that he bore a good character, *held*, that the evidence is insufficient to justify a verdict of guilty of the offense charged.

ID.—BILL OF EXCEPTIONS — DUTY OF PROSECUTION — PRESUMPTION UPON APPEAL.—Where the bill of exceptions, used on a motion for a new trial in a criminal case, specifies the insufficiency of the evidence to justify the verdict, it is the duty of the prosecution to have put into the bill some evidence, if any there be, to make it appear that there was proof of the participation of the defendant in the crime charged; and it will be presumed upon appeal that such specification is preceded by all the material evidence bearing thereupon.

ID.—DOCUMENTARY EVIDENCE — ORIGINAL PAPERS — COPIES — STATEMENT IN BILL OF EXCEPTIONS—RULE OF COURT—POSSIBLE SUFFICIENCY OF PROOF.—It is not the duty of the prosecution to embody in the bill of exceptions original papers used as evidence in the court below, nor to provide photographic or fac simile copies thereof, but the bill need only state what written evidence was given to the jury; and it seems that, upon proper application, the original papers may be ordered brought up under rule XXV of this court, but if not so ordered, the evidence is reviewed at a disadvantage, and in such case the question is whether, accepting the statement in the bill of exceptions, it can be seen that, in the nature of things, the evidence might have been sufficient.

ID.—DELAY IN TRIAL—"GOOD CAUSE"—DISMISSAL—QUÆRE.—The question as to what constitutes "good cause" for delay in the trial of a defendant accused of crime beyond the period of sixty days prescribed by section 1382 of the Penal Code, which provides that the prosecution shall be dismissed unless good cause to the contrary be shown, if a defendant whose trial has not been postponed upon his application is not brought to trial within sixty days after the filing of the information, discussed but not decided.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. WILLIAM T. WALLACE, Judge.

The facts are stated in the opinion of the court.

*John O'Byrne,* and *J. J. Guilfoyle, Jr.,* for Appellant.

*Attorney General W. F. Fitzgerald, Deputy Attorney General Charles H. Jackson,* and *Assistant Attorney General W. H. Anderson,* for Respondent.

TEMPLE, J.—In this case the Department having failed to agree upon a judgment, a reargument was had in Bank.   The defendant was a member of the board of election in the tenth precinct of the thirty-fifth assembly district, in the city and county of San Francisco, at the general election of 1894.   The information charges that at such election the defendant and one L. M. Martinet altered the official returns, and returned and caused to be received as true and official returns certain false and fraudulent tally lists, etc.

As presented here the transcript contains no evidence tending to show guilt in the defendant.   It would appear that the only inculpating evidence before the jury consisted of the comparison by the jury itself of certain handwriting, proven to be that of the defendant, with the altered portions of the tally lists.   The tally lists are not in the record in any form, and neither the original nor any fac-simile of either paper is presented here. The point is made that the evidence does not sustain the verdict.   Of course, since the only evidence consisted in the comparison of handwriting by the jury, the record here does not show whether there was any probative force in the evidence.   A motion for a new trial was made on the ground of the insufficiency of the evidence, and, among the specifications of the respects in which it was insufficient, it was stated in the bill of exceptions proposed by defendant that the evidence failed to establish that defendant was the person who made the alterations.

The defendant contends that in response to that specification it was incumbent upon the prosecution to have put into the bill *some evidence*—if any there was—which would make it appear to this court that there was proof of the participation of defendant in the crime

specified. This position is sustained by the cases of *People* v. *English*, 52 Cal. 211, and *People* v. *Fisher*, 51 Cal. 319. In the first-mentioned case the court, speaking of an exception of this character, said: "It must be presumed, and always will be presumed by this court, that such exception in a bill is preceded by all the material evidence actually given, bearing on the point of the objection." In *People* v. *Fisher*, *supra*, it is said: " The presumption in this court is that there was no evidence introduced in support of a fact in issue, unless the bill of exceptions contains the substance of the evidence introduced to prove the fact, or states that the fact was proven, or that evidence was introduced tending to prove it." This is in accord with the rule constantly enforced in civil cases, and seems just and reasonable.

These cases have never been expressly overruled or criticised, but the cases of *People* v. *Marks*, 72 Cal. 46, and *People* v. *Tonielli*, 81 Cal. 275, are cited as holding a contrary doctrine. A contrary view is stated in *People* v. *Marks*, *supra*, but it does not appear that any such question was raised in the case. In *People* v. *Tonielli*, *supra*, it is expressly stated that the evidence found in the record is sufficient, and it is then added that it does not appear that the statement contains all the evidence. I see no reason why the rule should be different in civil and criminal cases, and the cases last cited are not sufficient to establish a new departure in criminal cases.

But, although it was incumbent upon the people to see that the bill of exceptions contained some evidence tending to establish every element of the crime, still they could not, under the statute and the rules of the court, incorporate into it the original papers. Nor was it the duty of the prosecution—or indeed permissible under the code—to provide photographs of the writing. It was only possible under the Penal Code for it to do just what it did do, to wit, state what evidence was submitted to the jury. It then becomes one of the numerous cases in which we are at a disadvantage in weighing

the evidence. It cannot be represented or pictured here as the jury and the court saw it. Perhaps, upon a proper application, this court would have ordered the original papers sent up under rule XXV, but as this has not been done, still, if we can see that in the nature of things the evidence might have been sufficient, we must so hold.

What, then, does the record show in regard to the evidence? Defendant was a clerk of election at the precinct named, appointed as a Republican. He assisted in keeping tally as the votes were counted. There is no suspicion that he did not perform this duty properly. It was shown by the prosecution that after all the ballots had been counted for the state ticket defendant gave the result to a person who was employed by one of the candidates, and gave the correct result, and not according to the altered list. It is assumed that the lists had not been tampered with until after they had been certified and sealed up to be carried to the registrar. There was no evidence—other than the handwriting alluded to—which tends to show that after that time the paper, or the package including it, was ever in the hands or under the control of defendant. On the contrary, all the precinct officers who were sworn testified that they never saw him have it. Nor, aside from the handwriting, was there shown a single suspicious circumstance against the defendant. No motive was proven or alleged. It did not appear that he knew the person in whose interests the changes were made, or had any reason to desire his success. Witness after witness went upon the stand and testified to his good character. They were not even cross-examined, and there was no counter evidence.

The circumstances show no opportunity for defendant to have made the alterations except that against his protest he was ordered to accompany Martinet who was an inspector at that precinct, when Martinet took the returns to the registrar. Martinet was a Democrat, and defendant was ordered to go along as a Republican.

The package was sealed up when it was taken, and was still sealed when it was returned again to the precinct, and no one noticed that the seal had been tampered with, nor was there any evidence which tended to show that the alteration was made while the package was thus in the custody of Martinet. Both defendant and Martinet testified that the package was never in the hands of the defendant, and that the package was not opened, and that no alterations were made.

The package was returned to the precinct because the tally list and the ballots were in the same envelope, whereas they should have been in separate envelopes. The canvas for the local ticket had not yet been concluded. The package was then locked up in a box and kept until the next day, when the seal was broken by another officer of the election in the presence of the board.

A new package containing this tally list was then taken by a Mr. Maher, who was an additional judge, to be delivered to the registrar. He took them away alone to his residence, where they remained while he had dinner. He was there met by some other members of the board, who accompanied him to the registrar's office. The alterations were not discovered until the returns came to be canvassed by the board of election commissioners. How long that was after the returns were delivered to the registrar is not shown. As to their custody in the mean time the registrar merely stated that they remained in his office sealed.

The opportunity which defendant is supposed to have had to make the alterations was while the package containing the list was being taken by Martinet to the registrar and back again to the voting booth. As already said, there is no evidence tending even to raise a suspicion of any such thing, or that defendant ever had the package in his hands, and positive evidence that he did not. There was no testimony tending to cast suspicion upon Martinet, and there is, as in the case of Buckley, a total absence of proof of motive, or of inter-

est in the candidate in whose interests the alterations were made.

The writing by defendant which was compared with the alterations in the tally list was not made under normal conditions but in a state of excitement, upon the first charge of wrong-doing, and consisted in the figures 60 and 135, the same numbers in longhand, his name, a few other figures, and forty tally marks.

The record does not show what portions of the tally list were offered in evidence, save that the alterations were put in evidence, and it does not show that these were submitted to the jury for inspection. The bill of exceptions does not state that the jury did make the comparison or that they took the documents to their room when they retired to deliberate upon their verdict.

But suppose they did so, what does the bill show they compared? Why, only the figures alleged in the information to have been made in altering the tally list—the numerals 60 and 135; nothing more. Now, there was positively no other evidence save the supposed similarity of the few figures and words, written by defendant under abnormal conditions, with these figures, or, at most (and that is a supposition unsustained by the record), the same numbers written out in longhand, which tends to prove guilt or raise a suspicion against the defendant. Certainly, we all know how unsatisfactory is the evidence derived from the comparison of handwritings, even when done by experts of the greatest skill. Rarely will such evidence alone satisfy a reasonable person beyond reasonable doubt, especially when, as in this case, the conclusion is against positive evidence in addition to the presumption of innocence. To allow such a verdict to stand would, in my opinion, be an outrage upon justice.

The accused was not tried within sixty days after the filing of the information. He asked that the prosecution against him be dismissed for this reason. His motion was denied, and the ruling is relied upon here as error.

The constitution and the laws alike guarantee a

speedy trial, and section 1382 of the Penal Code prescribes that the prosecution shall be dismissed, unless good cause to the contrary be shown, if a defendant, whose trial has not been postponed upon his application, is not brought to trial within sixty days after the filing of the information.

The motion was denied on three grounds: 1. The defendant himself applied for and obtained a postponement; 2. There was no opportunity to try defendant, as the court had been constantly occupied; and 3. A material witness for the prosecution was absent.

1. The case was postponed on the application of defendant from the 12th of February, 1895, to the 13th, one day. Does the postponement of one day, on the application of the defendant, deprive him entirely of the constitutional guaranty of a speedy trial? Certainly not; and any such construction of the statute would be unreasonable.

2. In denying the motion, it was stated by the court that at no time since the plea had there been an opportunity to bring the case to trial except the twelfth day of February, on which day the defendant asked for and obtained a continuance of one day—other cases having in the mean time occupied the attention of the court. Nothing is said about the nature of the other cases. They are not shown to have been cases of equal urgency, and then nothing is said of the other eleven departments of the same court. (In my opinion, the constitutional guaranty imposes upon the state the duty of providing courts which, under ordinary conditions, can furnish a speedy trial.) A speedy trial does not mean at once, but with all convenient dispatch, and implies courts in which a trial may be had. No doubt it also implies reasonable time for the state to provide courts and juries, and to procure witnesses. It imposes, however, a special duty upon the state with reference to such cases, and, if the duty is not performed, the prosecution should be dismissed. The legislature has seen fit to lay down a rule by which the constitutional pro-

vision may be interpreted, which seems reasonable. In my opinion, the mere statement of the judge that the court has been otherwise engaged does not show good cause.

3. No diligence was shown to procure the attendance of the witness. Certainly the statement of the witness that it would be a hardship to require him to come from Sacramento was a poor excuse for continuing the case thirty-three days while the defendant was in jail, and liable to lose his witnesses by the delay. It was not shown that the services of the witness were at all important to the legislature. The benefit of this constitutional guaranty cannot be denied on such flimsy showing.

Upon the showing made I think the motion to dismiss the prosecution should have been granted, and the prosecution dismissed.

Under the rule laid down in *People* v. *Houston*, 40 Pac. Rep. 756, the information must be held good.

The judgment and order are reversed.

VAN FLEET, J., and HENSHAW, J., concurred.

McFARLAND, J., concurring.—I concur in the judgment of reversal, and in that part of the opinion of Mr. Justice Temple which holds that there is no evidence in the record sufficient to warrant the verdict. I do not concur in that part of said opinion which holds that in this case the prosecution should be dismissed because the defendant was not tried within sixty days after the filing of the information.

HARRISON, J., concurring.—I concur in the judgment of reversal upon the ground, as set forth by Mr. Justice Temple in his opinion, that the evidence, as shown by the record, was insufficient to justify the verdict. I am of the opinion, however, that the court did not err in refusing to dismiss the cause. The information was filed December 27, 1894, and the defendant was arraigned January 4th, and having taken time to plead, on the

11th of January demurred to the information.   Argument was had upon this demurrer January 18th, and on the 25th of January the court overruled the demurrer, and the defendant entered a plea of not guilty.   This was the first point of time after the filing of the information at which the defendant could be brought to trial, and his trial was had on the 18th of March.   Whatever time was consumed by him in dilatory motions or pleas which had the effect to postpone the time at which he could be brought to trial was "good cause to the contrary," upon his application for the dismissal of the cause, under section 1382 of the Penal Code.

GAROUTTE, J., concurring.—The record presented to us in this case contains no evidence whatever indicating defendant's guilt.   And whenever a defendant appeals to this court upon the ground that the evidence is insufficient to support the verdict, we must assume that all material evidence introduced before the jury is in the record.

Section 1944 of the Code of Civil Procedure provides:   "Evidence respecting the handwriting may also be given by a comparison made by the witness, or the jury, with writings admitted or treated as genuine by the party against whom the evidence is offered or proved to be genuine to the satisfaction of the judge."   In line with the principle declared in this section the people introduced the genuine handwriting of the defendant before the jury, for the purpose of comparison with the handwriting in which the altered returns were made.   We have not before us either a fac-simile of the genuine handwriting of the defendant, or of the altered returns.   Neither have we the original writings which might well have been brought here for inspection under the rules of court.   This evidence not being before us in any form, it must be assumed that it failed to establish defendant's guilt, and for that reason was deemed immaterial by the people in the preparation of the record on appeal.

Section 32 of the purity of elections act provides: "A person offending against any provision of sections * * * of this act is a competent witness against another person so offending, and may be compelled to attend and testify upon any trial, hearing, proceeding, or lawful investigation or judicial proceeding, in the same manner as any other person. But the testimony so given shall not be used in any prosecution or proceeding, civil or criminal, against the person so testifying. A person so testifying shall not thereafter be liable to indictment by presentment or information, nor to prosecution or punishment for the offense with reference to which his testimony was given, and may plead or prove the giving of testimony accordingly in bar of such indictment, information, or prosecution." It is now claimed that the defendant, relying upon the aforesaid provisions of law, is exempt from prosecution, inasmuch as he gave testimony before the board of election commissioners at a hearing held by that body for the investigation of these alleged election frauds. The hearing, proceeding or investigation, mentioned in this section, must be a lawful one, that is, one authorized by law. And the attorney general insists that the board of election commissioners had no authority under the law to carry on such an investigation as was being conducted when this defendant made the aforesaid statements. I agree with his position. The board of election commissioners is purely a creature of the statute, and it may only do those things which the statute says it may do. The examination carried on by it was in excess of and beyond its power, and defendant cannot, therefore, invoke the exemption provided by section 32 of the act.

I concur in the reversal of the judgment and order.