[Crim. No. 781.  In Bank. — July 11, 1901.]

## In re FREDERICK BEGEROW, on Habeas Corpus.

CRIMINAL LAW — SPEEDY TRIAL — CONSTITUTIONAL GUARANTY — EFFECT OF CODE PROVISION — UNEXPLAINED DELAY FOR SIXTY DAYS — DISMISSAL. — Section 1382 of the Penal Code, giving a defendant accused of felony the right to dismiss the prosecution if not brought to trial within sixty days after filing the indictment or information, when the trial is not postponed by him, is to be regarded as a construction of the constitutional provision which guarantees a speedy trial to every person charged with crime, by indicating what is a reasonable time for a speedy trial, in order that the constitutional guaranty may be kept. Its effect must be held to be that an unexcused delay of sixty days, *at any time*, to try a defendant, who does not consent to the delay, entitles him to have the prosecution dismissed.

ID. — MOTION TO DISMISS — PRIMA FACIE CASE — PRESUMPTION. — It is sufficient for the defendant, in order to make out his case for a dismissal, to show that he has been detained without a trial for more than sixty days; and the court must dismiss it upon such showing, unless good cause for detaining the defendant is shown by the prosecution. There is no presumption, in the trial court, that the court has acted regularly, or that good cause in fact exists.

ID. — DUTY OF PROSECUTION — DILIGENCE — UNNECESSARY IMPRISONMENT UNAUTHORIZED. — It is the duty of the prosecution diligently to prosecute the case against the defendant; and the officers of the state are not authorized to hold an accused person in imprisonment unnecessarily even for sixty days, without the speedy trial guaranteed by the constitution.

ID. — DECLARATION OF RIGHTS — COMMAND — LIMITATION OF POWER. — The Declaration of Rights, in the constitution, is a command and limitation of power upon state officials by the people, who created the formal government. The state cannot rightfully hold in prison even an accused person longer than is necessary that he may be tried, before trial had and judgment rendered.

ID. — DEFENDANT ACCUSED OF MURDER — MISTRIALS — UNEXCUSED DELAY — DISCHARGE UPON HABEAS CORPUS. — Where a defendant, accused of murder, had had several mistrials, for failure of the jury to agree, and the case was not thereafter put upon the calendar, and eighty-four days elapsed after the last mistrial, without excuse shown for the delay, and without the defendant's consent, the defendant is entitled to be discharged from custody upon *habeas corpus*.

HABEAS CORPUS in Supreme Court to release a defendant held in custody under informations filed in the Superior Court of Santa Clara County. William G. Lorigan, Judge.

The facts are stated in the opinion of the court.

. B. A. Herrington, and George W. Waldorf, for Petitioner.

*Habeas corpus* is the proper remedy to enforce the guaranty of the constitution for a speedy trial. (*State* v. *Kuhn*, 154 Ind. 450; *Ex parte Garvey*, 7 Col. 502; *In re McMichen*, 39 Kan. 406; *United States* v. *Fox*, 3 Mont. 512; *Brooks* v. *People*, 88 Ill. 327; *Glover's Case*, 109 Mass. 340; *Ex parte Jefferson*, 62 Miss. 223; *State* v. *Conrow*, 13 Mont. 552; *McGuire* v. *Wallace*, 109 Ind. 284; *Green* v. *Commonwealth*, 1 Rob. (Va.) 731; *In re Murphy*, 7 Wash. 257; *Ex parte Vinton* (Col., 1897), 47 Pac. Rep. 1019; *Strong* v. *Grant*, 99 Cal. 102; *People* v. *Douglass*, 100 Cal. 6.) The constitutional guaranty for a speedy trial cannot be limited to the period of sixty days from the filing of the indictment. (*People* v. *Morino*, 85 Cal. 515; *People* v. *Buckley*, 116 Cal. 146.)

TEMPLE, J. — This is an application for a discharge from custody, on *habeas corpus*, by the petitioner, who is held under two informations filed in the superior court of Santa Clara County, upon two separate charges for murder. The informations were filed August 15, 1900. Since then, defendant has been tried three times upon one charge, and once upon the other, and each trial resulted in a mistrial, because the jury failed to agree. The last jury was discharged March 6, 1901. Since that period neither case has been upon the calendar for trial. Eighty-four days had elapsed since the discharge of the last jury before this petition was filed. The delay was not caused by the defendant or with his consent. No witness for the prosecution has been absent or ill. There are three departments in the superior court of Santa Clara County. During said eighty-four days, one department has been occupied fifteen days only in the trial of criminal cases, and the other two have not been engaged in criminal trials at all.

. On the 20th of May, 1901, and after more than sixty days had elapsed since the discharge of the last jury, the petitioner applied to the superior court, upon notice, for a dismissal of the prosecutions against him, and, upon the hearing, showed by competent evidence all the facts above set forth. No showing to the contrary was made. No reason was shown at that time, or at any time, why the cases had not been brought to trial, but the motion was nevertheless denied.

The return shows, simply, that the sheriff held the defend-

ant by virtue of a commitment made by a justice of the peace, dated August 9, 1900. It is conceded that the facts are correctly stated in the petition.

Section 1382 of the Penal Code provides that the court, unless good cause is shown to the contrary, must order the prosecution to be dismissed in the following cases: 1. If an indictment or information has not been filed against him within thirty days after he was committed to answer; 2. When, if the trial has not been postponed upon his application, he is not brought to trial within sixty days after filing the indictment or information. The constitution (art. I, sec. 13) guarantees to every person charged with crime a speedy public trial.

In *People* v. *Morino*, 85 Cal. 515, this court said: "The legislature has provided what shall constitute a reasonable time within which a defendant shall be brought to trial"; and then, after setting out section 1382 of the Penal Code, proceeds: "The court below, in denying the defendant's motion, said: 'The question you raise I have considered before, and, under my construction of the law, it is discretionary, and not mandatory, and I will presume the court was engaged in the trial of other causes.' We think this is not a proper construction of the law. A party charged with crime has the constitutional right to a speedy trial, and the court has no discretionary power to deny him a right so important, or to prolong his imprisonment, without such trial, beyond the time provided by law. The statute is imperative. The court, unless good cause to the contrary is shown, must order the prosecution to be dismissed. Here, no cause for delay was shown. It was enough for the defendant to show that the time fixed by the statute, after information filed, had expired, and that the case had not been postponed on his application. If there was any good cause for holding him for a longer time without a trial, it was for the prosecution to show it. The court could not presume it. Under the facts as shown, the case should have been dismissed, and it was error to deny the motion."

That case has never, so far as I know, been called in question, and it decides some important points.

1. The statute is a construction of the constitutional provision, so far as to indicate what is a reasonable time within which the case should be brought to trial, in order that the constitutional guaranty may be kept. And it may be fairly interpreted to mean that this guaranty is violated whenever sixty

days is allowed to elapse without a trial, there being no good reason for delay, and the defendant not consenting thereto.

2. And, in the second place, it decides that it is sufficient for the defendant, in order to make out his case upon a motion for a dismissal in the trial court, to show that he has been detained without a trial for more than sixty days. Upon such showing the court should dismiss the case, unless good cause for detaining the defendant and for continuing the prosecution is shown on behalf of the people. There is no presumption in such case, at least in the trial court, that the court has acted regularly, or that good cause in fact exists.

It is well to remember that this case involves fundamental rights, and is of universal interest. Around those rights the English have waged their great battle for liberty. Without the narration of the conflicts to which they have given rise, the history of the English people would be a dull affair. The right of the government with reference to persons accused of crime has been, and is yet, a matter of great consideration. It led to the agitation which wrung from power the Great Charter, the Petition of Right, and the Habeas Corpus Act. All the great achievements in favor of individual liberty, of which the English people are so justly proud, may be said to have come through contests over the rights of persons imprisoned for supposed crime.

And justly it is deemed a matter of the utmost importance. The government cannot take property from the meanest inhabitant, without just compensation paid or tendered in advance; but it takes his liberty, which it has been justly said is to some extent to take his life, upon a mere charge of crime. This is necessary, that society may be protected. But necessity is the only excuse, and to imprison beyond what is absolutely necessary is tyrannous and oppressive. And this is precisely what the state has covenanted with each inhabitant that it will not do. In this one provision of the constitution the state speaks as did the English sovereign in the Great Charter in 1215. It is an assurance from the sovereign, *Nec super eum ibimus, nec super eum mittemus, nisi per legale judicium parium suorum, vel per legem terræ.*

Hallam says, referring to this, "From the era, therefore, of King John's charter it must have been a clear principle of our constitution that no man can be detained in prison without trial." (2 Hallam's Middle Ages, 342.)

The state, then, in a criminal case, is not only a party litigant, and, as such, bound to use diligence to prepare for trial, on pain of having its case dismissed, but it holds the defendant in custody upon this express guaranty for a speedy trial, and that it will not continue to hold him, save under a legal verdict declaring him guilty,—that is, without trial.

In the charter, what has been called a general jail delivery was required in each county once each year. The act of Parliament provided that a session of the court of oyer and terminer should be held twice a year in each county. The court was to inquire into the cause of the confinement of every person confined, and it was expected to try or discharge, at least on bail, all who had not been tried. The Habeas Corpus Act (31 Car. II) also contained provisions intended to insure speedy trials.

It seems that the means of enforcing this charter, or the rights there assured, was from the first enforced through the writ of *habeas corpus*, which has itself been called the safeguard and the palladium of our liberties. All agree that the use of this writ was frequent after the Great Charter, but it is not clear whether it was in existence before. It was the refusal of this writ, or delays in its use, which led to the Petition of Right and to the Habeas Corpus Act. It was soon found useful in many other respects, but it cannot be doubted that its most valued function was to enforce the rights secured by these memorable charters and laws, and, so far as I know, such use was never called in question in England.

In this country it has sometimes been denied that a defendant held to answer upon a valid indictment or information can be so discharged. It was so held in this state, in *Ex parte Strong*, 31 Pac. Rep. 574. It was there said that the allegations of the petition, if true, showed that it was the duty of the superior court to dismiss the prosecution, "but until the information is dismissed, the imprisonment is lawful." In *Strong* v. *Grant*, 99 Cal. 100, it was said, in substance, that in passing upon a motion for a dismissal the court acted judicially, and could not be compelled by *mandamus*. In a concurring opinion, the chief justice said relief could be had in such a case through the writ of *habeas corpus*, and this was finally so held by the court in *Ex parte Vinton* (Col., 1897), 47 Pac. Rep. 1019.

So far, I presume, all will agree, and I have alluded to the sources from which the idea of the constitutional and statutory provisions were derived for the sake of the remaining question, the entire difficulty in regard to which, in my view, comes from certain inconsistent decisions of this court. The constitution only guarantees a speedy public trial; the code, in effect, that an accused person must be tried within sixty days after filing the indictment or information. If tried within that period, and a new trial is granted by the superior court or obtained on appeal, it is contended the statute has no further application to the case. A trial has been had within the period prescribed, and the requirement of the statute has been fully satisfied. So far as the statute is concerned, he could be lawfully held for the balance of his life. And the same result could follow, although no trial was had within sixty days, if good cause were shown why it was not tried within that period, or a continuance was had beyond that time by consent of the defendant. If a material witness could not be procured within that time, or the defendant was too ill to be tried, he would thereby lose all possible benefit of the statute. For, if the letter of the statute is to control, it certainly does not require that the trial shall be had within sixty days, where good cause is shown, or the defendant consents to delay. And if it has no force after sixty days have expired, it could not apply to the cases supposed, at all. And the same contention might be indulged in regard to the constitutional guaranty of a speedy trial. If the accused has been tried, although the trial resulted in a mistrial, it might be said with equal plausibility that he has had a speedy trial, and the guaranty of the government for his benefit has been kept. And is this all that is left to us of these great achievements in the direction of securing individual liberty, as against the government?

It must be remembered that in construing our Declaration of Rights, there is no presumption that the government or its officers will act justly, but the contrary. These sections imply possible oppression, and are designed to enable the victim to assert his rights, even as against the government. The very first section in that chapter of our constitution asserts that the right of all men to enjoy and defend life and liberty is inalienable. Then follow twelve sections, all calculated to secure to individuals this right, *as against the government*. To the same end, section 13 declares the *right* to a speedy public trial.

This, certainly, has no other function than to protect those accused of crime against possible delay, caused either by willful oppression, or the neglect of the state or its officers. For, no doubt, as said by Blackstone (Commentaries, book 3, p. 138), "persons apprehended upon suspicion have suffered long imprisonment, merely because they were forgotten."

Our Declaration of Rights differs from the great English charters, in that it is not an assurance to the individual from a sovereign, but it is a command and a limitation of power upon state officials by the people, who created the formal government. Either is a recognition of the fact that the state cannot rightfully hold in prison even an accused person longer than is necessary that he may be tried, before trial had and judgment rendered.

The imprisonment after the lapse of sixty days is just as oppressive, and, if unnecessary, as much a violation of the rights of the accused person, as within the sixty days. There is no reason why the legislature should be desirous of protecting the rights of an accused person for sixty days, and be indifferent to his fate afterwards. To attribute such ideas to the legislature, is to charge it with folly. There is very little meaning or benefit in the statute, unless it is construed as it was in *People* v. *Morino*, 85 Cal. 515, and in *People* v. *Buckley*, 116 Cal. 146. Regarded as a provision to enforce this constitutional guaranty, its effect must be held to be, that an unexcused delay of sixty days, *at any time*, to try a defendant will entitle him to have the prosecution dismissed. Without this statute, it may be doubted whether the prosecution could be dismissed as a penalty for delay. In some states I find a disposition to minimize the rights of an accused person, and it is sometimes provided, simply, that, unless tried, he may be discharged from custody.

The terms of the constitutional provisions on this subject vary in the different states. In two or three there is no constitutional declaration upon the subject, but all, I think, have statutory provisions providing for the rights of accused persons in this regard. I cannot find that this precise question, under a statute like ours, has been decided. The view here taken was suggested in *In re Murphy*, 7 Wash. 257. (See also *State* v. *Kuhn*, 154 Ind. 450, where *People* v. *Morino*, 85 Cal. 515, was approved; also, *In re McMichen*, 39 Kan. 406.)

This construction was assumed by this court in *Ex parte Ross*,

82 Cal. 109. A mistrial within the period of sixty days was had in that case, and it was there assumed that another trial must be had within sixty days after the mistrial. That the defendant had been brought to trial, and a mistrial had, excused the delay until that time, and it was assumed that there must elapse sixty days during which there was no excuse for delay.

And, indeed, a mistrial is not a trial, within the meaning of the constitutional or statutory provision. The fact that there has been an attempted trial may constitute the good cause which the prosecution is required to show to excuse delay; but the speedy trial which is guaranteed is for the purpose of determining the guilt or innocence of the accused person, and the guaranty of the constitution, and of the Habeas Corpus Act of England, are of no substantial advantage if they mean less than this. On this subject it is said in Church on Habeas Corpus (sec. 254): "The fact that a former conviction on an indictment has been reversed and a new trial ordered leaves matters to stand as if there had never been any trial on the indictment. In the eye of the law, he has not been tried at all," etc. This is the reason why it is held that by a mistrial he has not been in jeopardy, and cannot avail himself of it as a defense. If he has been tried in the legal sense, he could do so.

It only remains to say that the statute does not authorize the state or its officers to hold an accused person in imprisonment unnecessarily, even for sixty days. As already stated, when the prosecution is begun, the state becomes a party litigant, and, as such, must diligently prosecute its case. No unnecessary delay against the will of the defendant is to be allowed to it.

The defendant is discharged from custody.

Van Dyke, J., Beatty, C. J., and Henshaw, J., concurred.

McFarland, J., dissented.

GAROUTTE, J., dissenting. — In the foregoing opinion much is said about the Great Charter, the Petition of Right, and our own fundamental law, as forbidding the unlawful restraint of the liberty of the citizen; yet it must be borne in mind that every violation of a constitutional right of an imprisoned citizen does not form the basis of a petition for a writ of *habeas corpus*. If a citizen is to be discharged from custody upon writ of *habeas corpus* because of the denial of his constitutional right to a speedy trial, I see no reason why he should

not likewise be discharged from custody if deprived of his constitutional right to a trial by a jury of twelve impartial men. A citizen is no more entitled to a speedy trial by the constitution, than he is entitled to a public trial by the constitution, yet a denial of a public trial, of itself, would not justify an invocation by a defendant of a writ of *habeas corpus*. But these suggestions outline a much more serious question than is presented by the opinion in the case at bar; for, upon a careful reading of it, we find that the conclusion is builded upon the statutory provision of the Penal Code (sec. 1382) which reads: "The court, unless good cause to the contrary is shown, must order the prosecution to be dismissed in the following cases: . . . 2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within sixty days after the finding of the indictment or filing of the information." This statute, to my mind, is but a foundation of sand upon which to rest the conclusion declared by the court.

I cannot agree to the construction given this statute. It is declared by the opinion that when the statute says a defendant "must be brought to trial within sixty days," it means, in effect, that he must have a trial which results in a final judgment,—that is, a trial which ends in a verdict of not guilty; or if the result be a verdict of guilty, then the verdict must be one that stands the test of appeal, if an appeal be taken therefrom. In other words, it is declared that if the trial result in a disagreement of the jury, or in a verdict of guilty which is afterwards set aside by the trial court, or by the appellate court upon appeal, then, in those cases, the defendant has had no trial, or, more incomprehensible still, it is said he has not been "brought to trial." In reply to the question, What does this law mean when it says "a defendant must be brought to trial within sixty days"?—the answer seems naturally to follow: it means a defendant must be *put upon his trial* within that period of time. And that the legislature intended this to be the meaning of the law, I have no shadow of doubt. The word "trial" is defined by Webster to mean "the formal examination of a matter in issue in a cause before a competent tribunal." The Penal Code, in a hundred different places, by titles, chapters, sections, and sentences, uses the word "trial," and in no single place does it, standing alone, have the signification suggested in the opinion of the court. The Penal Code contemplates a procedure where a defendant may be brought

to trial, convicted, move for a new trial, his motion be denied, then appeal from the order denying his motion to this court, and the order reversed, and the cause remanded for a new trial. Yet, after all this has been done, it surely cannot be said that the defendant in such a case has not been "brought to trial." Instances may be found in the reports of this state, where a defendant has been tried and convicted upon a single charge of crime three times, and, upon appeal, a new trial ordered upon each conviction. I cannot bring myself to believe that such defendant has not been "brought to trial."

I also dissent from the construction given the statute in another important particular. The statute says the defendant must be brought to trial within sixty days "after the finding of the indictment or filing of the information." The opinion declares the statute means, not what it says, but it means, in effect, that the defendant must be brought to trial, the first time within sixty days after the finding of the indictment or filing of the information, and thereafter within sixty days from the first trial, if that trial result in a disagreement of the jury, and if an appeal be taken to the appellate court, then within sixty days after the return of the *remittitur*. Now, this court is not authorized by judicial construction to so broaden the effect of this statute. The construction here given the statute blots out all meaning to the words "indictment or information." It seems to me the court has now made a statute by construction, which it feels the legislature ought to have made. Again, a contrary construction to the one here declared was given this statute eighteen years ago, in *People* v. *Giesea*, 63 Cal. 345, — a construction which has been approved in the very late case of *People* v. *Lundin*, 120 Cal. 308, and probably in still later cases. It seems to me, under these circumstances, that if the law is not broad enough as judicially construed, it is for the legislative body to broaden it.

Putting behind me all questions as to the construction of this statute, I am still satisfied, upon general principles of law, that the remedy by writ of *habeas corpus* cannot be invoked in this and similar cases. As before stated, the decision in this case, reduced and condensed, is, that this defendant should be discharged from custody upon a writ of *habeas corpus* because he has not been brought to trial within sixty days from his last trial, no good cause for the delay appearing. In other words, by virtue of this statute it is declared that his imprison-

ment has become illegal, and he is entitled to be discharged in this proceeding. But how may this be done when the statute says the trial court must dismiss *the prosecution upon motion* when the sixty-day period has expired without a trial, and there is no good cause for the delay? That statute vests the trial court alone with power to discharge the prisoner for the reasons stated. It gives this court no added power or authority. Whatever power and authority this court has in the matter is above and beyond that statute. In the case of the petitioner, he asked the trial court, by motion, to dismiss the prosecution in his case, and invoked this statute to support the motion. The trial court denied the motion. It had jurisdiction to make that order, and it was specially enjoined upon it, by the statute itself, to exercise that jurisdiction. That order was a valid, binding order, as much so as any decree or judgment made within the jurisdiction of a court of record. It forever settled the question upon which it was made, unless it was successfully assailed by appeal or other direct attack. Indeed, it was not attempted in this proceeding to review the legal soundness of the order made by the trial court; but this court has proceeded upon *habeas corpus* as if no such order was ever made, and has tried for itself the very question of fact that it was the duty of the trial court to try, and which it tried, and, having full and complete jurisdiction thereof, decided directly to the contrary of that which this court has now decided. If the court can now do this, then any superior court in the state, having jurisdiction, can do the same thing, and thus a novel and interesting judicial spectacle is presented. Upon the hearing of the motion to dismiss the prosecution in the trial court, perchance the evidence was overwhelming, showing good cause for delay in bringing the defendant to trial, and upon the hearing in some other court, upon *habeas corpus*, the evidence may not be the same, for it is a wholly independent proceeding, and there the evidence may be strong to the effect that there is no good cause for delay, and the discharge of the defendant by that court follows. A case is then presented where a trial court, having perfect jurisdiction of the question at issue, makes an order or decree refusing to discharge the defendant, the order not even being erroneous to the weight of a hair, and then a second court, upon *habeas corpus*, hearing the identical issue and making a decree directly to the contrary. I am satisfied these results cannot be attained within sound legal principles.