[Crim. No. 1091. In Bank.—July 2, 1904.]

THE PEOPLE, Respondent, v. THOMAS MORAN, Appellant.

CRIMINAL LAW—MURDER—SUPPORT OF VERDICT—CONSPIRACY.—Where the verdict of the jury finding the defendant guilty is sustained by evidence that the deceased was deliberately murdered, and there was evidence from which the jury might infer that there was a con-

---

[1] 11 Am. St. Rep. 225, and note.

spiracy, and that defendant was one of the confederates, it cannot be held that the verdict is unsupported by the evidence, or that it is against law.

ID.—RIGHT OF ACCUSED TO SPEEDY TRIAL—DISMISSAL—GOOD CAUSE FOR DELAY.—The defendant has a constitutional right to a speedy trial, and is entitled to a dismissal under section 1382 of the Penal Code, if not brought to trial within sixty days, unless good cause to the contrary is shown; but where good cause was shown for delaying the trial a motion to dismiss was properly denied.

ID.—REQUESTED INSTRUCTIONS PROPERLY REFUSED—VERDICT OF NOT GUILTY — CONSPIRACY — REQUESTS OTHERWISE GIVEN. — Requested instructions that the jury should return a verdict of not guilty, and that there was no evidence of a conspiracy, and requests substantially included in the charge of the court, were properly refused.

ID.—MODIFICATION OF REQUESTS—ACCOMPLICE—PURPOSE OF PRESENCE.— A requested instruction that an accomplice is one who not only aids by his presence or otherwise in the commission of an offense, but is also a participant of the criminal purpose of the perpetrator, was properly modified by stating that "an accomplice may aid and abet without taking physical part in the actual violence." And a requested instruction that if the defendant was merely present to witness the murder, or to witness a beating or a fight, and did nothing to aid and abet the person or persons committing the act, the verdict should be not guilty, was properly modified by adding: "But it is exclusively for the jury to determine whether the defendant was present, and, if so, for what purpose, if any, and to what extent, if any, he was connected with the person or persons, if any, committing the act, if any was committed."

ID.—EVIDENCE—DYING DECLARATIONS.—Where the evidence shows *prima facie* that the dying declarations of the deceased were made when he was fully persuaded that he was about to die, to the effect that one of the other defendants did the shooting, they were admissible and very material evidence in connection with other evidence in the case against this defendant.

ID.—DENIALS AND ADMISSIONS OF DEFENDANT.—Where the defendant at first and repeatedly denied being present at the time of the murder, and finally admitted that he was at the scene of the murder, his admissions made the previous denials of that fact evidence against him, on the same principle that his flight was evidence against him.

ID.—COMPETENCY OF ADMISSIONS — CORPUS DELICTI — PARTICIPATION IN CRIME.—Though extrajudicial admissions of the defendant cannot be received to establish the *corpus delicti*, yet where it was fully established by proof that the deceased had been deprived of his life by criminal agency, his admissions that he went with the murderer to the scene of the murder were competent for the distinct purpose of showing that he was a participant in the crime.

CXLIV. Cal.—4

ID.—FOUNDATION FOR ADMISSION OF DEPOSITION.—Evidence was competent in laying a foundation for the admission of a deposition taken at the preliminary examination, on the part of the father of the witness, that he had taken her to the City of Mexico for the sake of her health, and left her there in the care of her mother, and as to the intention of the mother as to the duration of her stay, and his refusal to let the daughter come back with him; and where there was other evidence sufficient to show that she was beyond the jurisdiction of the court, the deposition was properly admitted.

ID.—CERTIFICATE TO DEPOSITION—PRESUMPTION UPON APPEAL.—Where it abundantly appears from the record that there was a certificate to the deposition, though the certificate was omitted from the bill of exceptions, it must be presumed to have been in due form. It was the duty of the party objecting that it was not in due form to have it inserted in the record.

ID.—EVIDENCE AS TO FIRING OF FATAL SHOT.—The evidence in the deposition that a co-defendant fired the fatal shot was admissible and material to the charge against the defendant; and the fact that the cross-examination was by counsel for co-defendants, in the presence of all the defendants, cannot affect its admissibility.

ID.—STATEMENT OF DEFENDANT.—A statement of the defendant, that some one in the saloon spoke of going out to "get a scab," was admissible in connection with proof that he acted upon the suggestion, and went with others to wait for the car conveying the "scab" who was killed, and at the concerted signal boarded that car.

ID.—REPUTATION FOR PEACE AND QUIETNESS—CROSS-EXAMINATION—ARREST OF DEFENDANT—MISCONDUCT OF DISTRICT ATTORNEY.—Where a witness for the defendant had testified to his good reputation for peace and quietness, it was proper to ask him on cross-examination if he had not heard that he had been arrested for disturbing the peace; and it was not misconduct of the district attorney to have first asked if he had not been arrested for vagrancy and disturbing the peace, and then to withdraw the question as to vagrancy after exception taken to his conduct in putting the question.

ID.—INSTRUCTIONS AS TO VERBAL ADMISSIONS.—Instructions requested as to the receiving of verbal admissions with caution, which embraced matters in addition to that prescribed by section 2061 of the Code of Civil Procedure, were properly refused.

ID.—MATTERS OF COMMONPLACE—CASE AFFIRMED.—An instruction in the language of section 2061 of the Code of Civil Procedure states a mere commonplace, within the general knowledge of jurors, and neither the giving nor refusing of it is ground for reversal. (*People v. Wardrip*, 141 Cal. 233, affirmed. Beatty, C. J., and Henshaw, J., *contra.*)

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. William P. Lawlor, Judge.

The facts are stated in the opinion of the court.

George D. Collins, for Appellant.

U. S. Webb, Attorney-General, C. N. Post, Assistant Attorney-General, and P. F. Dunne, for Respondent.

BEATTY, C. J.—The defendant and three others—Buckley, Donnolly, and Duncan—were jointly accused of the murder of George W. Rice. They demanded and were accorded separate trials, and Buckley, Donnolly, and defendant having been convicted, they have prosecuted their separate appeals to this court. The opinions of the court affirming the judgments in the case of Buckley and Donnolly are reported in 143 Cal. 375, 394. They show, as does the record in this case, that Rice was deliberately murdered. So far there has never been any doubt, or room for controversy, but there has all along been a serious question as to the identity of the slayer and as to the identity and number of his accomplices. The theory of the prosecution has been that the murder was committed in pursuance of a conspiracy; that Buckley was the one who inflicted the fatal wounds, and that Donnolly, Duncan, and this defendant were his confederates. In Buckley's case the effort of the defense was to show that not he, but a person called China Copeland, was the slayer. In the present case, as in the case of Donnolly, the defense was that there was no evidence of a conspiracy to kill Rice, and that whoever may have been the slayer, the defendant had no share in the crime, or, if there was a conspiracy, that he had no part in it. This defense, which failed before the jury, is strongly reasserted here, and it is contended in behalf of the defendant that there is no evidence in the record which, conceding it to be true, will sustain the verdict convicting him of the murder.

The conceded facts of the case are that Rice was a machinist who, during a strike, was working at a shop on First Street, near Howard, in the city of San Francisco. On October 11, 1901, at 5:30 P. M., he left the shop for the pur-

pose of returning to his home near Twentieth and Howard streets.

At the corner of First Street he boarded a Howard-Street car and took a seat in the central or inclosed compartment. The man who shot him, with at least two others, boarded the same car at some point on its way to Twentieth Street and took their places outside of the inclosed section. From a point at least as far down town as Tenth Street the man who did the shooting and the man who fled in his company from the scene of the murder stood on the step on the left side of the open section in front of the car, the shooter in front and his companion by the middle stanchion behind him. At a point near Nineteenth Street the third man moved from the position he had been occupying to a central position on the step extending along the left side of the open section at the rear of the car. When the car stopped on the intersection of Twentieth and Howard streets it was headed south. Rice stepped off on the left or eastern side at the rear of the closed section and started in a southeasterly direction, on his way to his home. He had reached a point opposite the center of the closed section of the car when the man who had posted himself on the rear step rushed up behind him and commenced beating him over the head with a loaded billy. After receiving several blows, by which his scalp was seriously lacerated, he sunk or fell to the ground. While this beating was in progress the two men who had been standing on the front step of the car approached the spot where Rice fell, and when he had fallen the one who had occupied the front position on the step shot him four times with a pistol. After the second shot the man who did the clubbing ran down Twentieth Street towards Shotwell Street, a street parallel to and east of Howard Street. After the fourth shot the other two ran together in the same direction. The course of the first man who ran is not traced beyond the intersection of Shotwell Street. The others ran together to Shotwell Street, thence to Nineteenth Street, and thence to Folsom Street, where they separated. So far the facts are clear and undisputed, and they leave no room for doubt that Rice was the victim of a deliberate and cruel murder. But, as above stated, counsel for defendant contends, that there is not a shadow of evidence to connect him with the crime.

We think that in this part of his argument counsel has permitted himself to indulge in some extravagance of statement as to what the evidence shows, or rather as to what it fails to show. He asserts, for instance, in a number of places and in connection with various points of his argument, that there is absolutely no evidence, aside from Moran's admissions (which he claims are incompetent), that he was at the scene of the murder. But the truth is that besides his own admission of the fact—the competency of which as evidence against him is undoubted—there is the positive evidence of Mr. Piatt and Arthur Cleve that Moran was the person who stood at the middle stanchion on the front step, that Buckley was the man who stood in front of him on the same step, that they left their positions when the clubbing commenced, that Moran stood by while Buckley shot Rice, and that they ran away together. The contention that Moran's admission that he went with Buckley to the scene of the murder was incompetent evidence is based upon the proposition that proof of his presence there was essential to the establishment of the *corpus delicti,* for which purpose extrajudicial admissions are not received. But the *corpus delicti* was fully established when it was shown that a human being had been deprived of life by criminal agency, and of that there was never any doubt. The proof that Moran was present at the time of the murder was distinct from the proof of the murder itself and for the distinct purpose of showing that he was a participant in the crime, and to this point his admissions were entirely competent.

There is, in short, no room for controversy as to the fact that Moran accompanied Buckley to the place where the murder was committed, and there was the clear and positive evidence of two witnesses who had the best opportunity of observing that he left the car at the same time Buckley did, stood by while he fired four shots into the prostrate body of Rice, and fled from the scene in his company. Other testimony showed that they continued together as far as Nineteenth and Folsom streets. When Buckley was overtaken and arrested he asserted his innocence and called upon Moran to exonerate him, but Moran denied being present when the shooting occurred, asserting that at the time of the murder he was at a restaurant down town. This denial he repeated after-

wards in the presence of Donnolly, but finally he admitted that during the afternoon of the day of the murder he and his three co-defendants had been drinking together at a saloon, corner of Zoe and Brannan streets; that he was well acquainted with Buckley, but only slightly acquainted with Donnolly and Duncan; that while in the saloon something was said about going out to the Mission to "get a scab," or to "do up a scab"; that the four men proceeded to the corner of Second and Howard streets, where Duncan left them to go home; that he and Donnolly stood on one side of the street and Buckley on the other; that presently a man was seen running up Howard Street from First Street; that he understood this to be the signal that the "scab" was on the car then coming up from First Street; that he and Donnolly then boarded that car on the right-hand side and Buckley on the left; that when the car stopped at Twentieth and Howard streets he got off on the right-hand side, and when he heard the shooting he ran away because he did not want to be mixed up in anything like that. This statement, it will be seen, is in important particulars contradicted by the evidence of Piatt and Cleve, who testified positively that Moran was on the same side of the car with Buckley and close to him on the step; that he stood by him while he was shooting and accompanied him in his flight; and these are all circumstances strongly tending to prove that the two were acting in pursuance of a common purpose. Added to this there was another circumstance testified to by Arthur Cleve, to which the jury may have attached importance as evidence of a thorough concert between Buckley, Moran, and the unidentified wielder of the club. As the car approached Twentieth Street it made occasional stops, and on these occasions Moran, according to Cleve, would leave his position on the step, walk out into the street, take an observation of the rear portion of the car and then resume his position on the step. Another witness noticed that the man who did the clubbing, after posting himself on the rear step at Nineteenth Street, assumed a crouching position for the purpose of observing the situation in front. It may be that the evidence is not conclusive as to a conspiracy between these parties to take Rice's life, but that certainly was its tendency, and it was for the jury, not for this court, to determine its sufficiency to prove the fact beyond a reason-

able doubt. A conspiracy may, and generally must, be proved
by circumstances, and if the circumstances tend to prove a
conspiracy, it is for the jury, not the court, to determine
whether they are consistent with a reasonable hypothesis of
innocence. It is certainly possible that Moran accompanied
Buckley from Zoe and Brannan streets to Twentieth and
Howard streets for no other purpose than to witness the beat-
ing of a "scab," as he claims, but it cannot be held, as matter
of law, that the evidence was wholly insufficient to warrant
the jury in putting a worse construction upon his actions.
Counsel cites a number of cases, including *People* v. *Stevens*,
68 Cal. 114; *People* v. *Creegan*, 121 Cal. 560, and *Hicks* v.
*United States*, 150 U. S. 442, in which it was held that
the evidence was insufficient in law to prove guilt, but in
none of the cases cited was the evidence so strong as in this
case.

In the foregoing statement it will be observed that Piatt's
testimony, to the effect that Moran did the clubbing, is not
adverted to. The reason is that I am convinced that in this
particular he was mistaken, and it must be conceded that his
mistake in this particular is an impeachment of his accuracy
in other particulars, but it is a matter of common experience
in cases of this character to find witnesses of unquestionable
veracity differing in minor, and often in most important,
details. In this case I have accepted the evidence of the wit-
ness Piatt only so far as it is corroborated by Cleve—i. e. as
to the identity of Moran with the man who stood on the step
next to Buckley, who left the car with him or just before him,
and who fled in his company. That Buckley was the man
who stood on the front of the step and who did the shooting
was proved by clear, and, in this case, uncontradicted testi-
mony.

Most of the legal propositions advanced by counsel for ap-
pellant in support of his contention that the verdict in this
case is not sustained by the evidence, and that it is against
law, are correct and undeniable; but he ignores several im-
portant features of the evidence which, when considered in
connection with the rest, were sufficient in point of law to
warrant the inference that Moran had conspired with Buck-
ley and others to take Rice's life. We must assume that such
was the conclusion of the jury, for otherwise they would have

brought in a verdict of not guilty under the instructions of the court, which contained the substance of every legal proposition for which counsel is here contending, excepting that in relation to the *corpus delicti,* above shown to be untenable. We cannot hold that the verdict of the jury is unsupported by the evidence or that it is against law.

We come next to the various assignments of error in the rulings of the court. The information against appellant and his co-defendants was filed December 9, 1901, and he was not brought to trial until February 10, 1902, sixty-three days later.

The constitution guarantees to every person accused of crime a speedy trial (art. I, sec. 13), and this constitutional right is further secured by section 1382 of the Penal Code, which provides that *unless good cause to the contrary be shown,* the court must order the prosecution to be dismissed when a defendant, whose trial has not been postponed upon his application, is not brought to trial within sixty days after the finding of the indictment, or filing of the information. In this case the trial of the defendant was not postponed on his application. He consented once to a postponement for one week of the entry of an order setting the case for trial, but he never consented to a postponement of the trial beyond the sixty days, and the court clearly erred in denying his motion to dismiss the prosecution unless good cause to the contrary was shown. But we think this was done. The four defendants had demanded separate trials, and if they were tried in the same court, the trials must follow in succession. The state had elected to try Buckley first, and he was brought to trial in January, within the sixty days. His trial was protracted and did not end until Friday, the 7th of February. Prior to that time, and when of course it could not be certainly known when Buckley's trial would end, this defendant's case was set down for trial on Monday, the 10th, which was the earliest date it could have been commenced, unless it had been put down for the preceding Saturday. But there could have been no certainty when the case was set that Buckley's case would be ended on Friday, and it was not an unreasonable exercise of the discretion necessarily inherent in the trial court to set the case for Monday rather than for the preceding Saturday, the last day of the week, and a day when it could not be as-

sumed with any confidence that the trial could proceed. It is contended that the trial of Buckley might have been sooner commenced, and, therefore, sooner concluded, and in this connection complaint is made that the court dismissed the jury panel and refused to take up the trial of criminal causes during the week between Christmas and New Year. But it was shown that there was an unusual congestion of criminal causes in that department of the superior court, necessitating the transfer of a number of such causes to other departments. This prevented the Buckley case from being taken up at once, though it might have been reached sooner but for the holiday. We do not think the suspension of criminal trials during the week following Christmas is an unreasonable proceeding. Neither is a defendant whose trial is necessarily delayed by unusual conditions entitled to complain that a greater number of the departments of the superior court than usually suffice are not assigned for criminal causes.

The business of the court must be arranged with reference to the conditions ordinarily prevailing, and somewhat with reference to the force of the district attorney's office. If the twelve departments of the superior court in San Francisco were all to undertake the trial of criminal causes at the same time most of them would have to get along without the assistance of a prosecuting officer. Besides all this, Buckley was brought to trial within the sixty days, and the fact that this defendant, jointly charged with the same offense, had demanded and been accorded a separate trial was good cause for its postponement to a date when the court might safely assume the Buckley case would be concluded. In the cases cited by appellant, *People* v. *Merino,* 85 Cal. 515; *People* v. *Buckley,* 116 Cal. 146, and *Ex parte Begerow,* 133 Cal. 349,[1] no good cause was shown for delaying the trial.

The court did not err in modifying, before giving, defendant's requested instruction No. 5. The instruction, as drawn, was to the effect that an accomplice is one who not only aids by his presence or otherwise in the commission of an offense, but is also a participant of the criminal purpose of the perpetrator. The modification was merely a statement to the effect that an accomplice may aid and abet without taking physical part in the actual violence, a perfectly correct statement of

---

[1] 85 Am. St. Rep. 178, and note.

the law which could not possibly have operated to the prejudice of defendant's rights.

Defendant's requested instruction No. 6 was an instruction to return a verdict of not guilty and was properly refused for the reasons above given in discussing the evidence, and for the additional reason that it is an instruction which our courts are not authorized to give under any circumstances. (*People* v. *Stoll*, 143 Cal. 689.)

Defendant's requested instruction No. 7, to the effect that there was no evidence of a conspiracy on his part to murder Rice, was properly refused. There was evidence strongly tending to prove the conspiracy, as has been shown in the foregoing statement.

· The court at the request of the defendant gave the following instruction:—

"You are instructed that if the evidence in this case does not satisfy your minds beyond all reasonable doubt that the defendant Moran was a party to a conspiracy to murder the deceased, George W. Rice, your verdict must be that the defendant is 'not guilty.' And you are further instructed that if the defendant was merely present to witness the murder, if any, or to witness a beating or a fight, and did nothing to aid and abet the person or persons committing the act, then your verdict must be that the defendant is 'not guilty.' "

To which the following was added by way of qualification:—

"But it is exclusively for the jury to determine whether the defendant was present, and, if so, for what purpose, if any, and to what extent, if any, he was connected with the person or persons, if any, committing the act, if any was committed."

The instruction stated very clearly the hypothesis upon which defendant claimed an acquittal. The modification merely reminded the jury that it was for them to determine, whether the hypothesis was consistent with the evidence. This was not error.

Defendant's requested instruction No. 13 contained a correct statement as to the burden of proof and a correct definition of reasonable doubt. It was refused by the court upon the ground that it was covered by the charge of the court. We think this is true. Although the language used by the court in its charge is not identical with that contained in the requested instruction, it embraces everything essential, and

states the doctrine with great fullness in the form often approved by this court.

The defendant's requested instructions 16 and 28 were refused by the court on the ground that they were covered by the charge. They related to the presumption of innocence, and contained nothing beyond what was fully, and with some repetition, included in the charge of the court, except that they stated that the presumption of innocence was "an instrument of proof" and was "evidence" in favor of the defendant. It is true that law writers and judges in discussing the foundation of the doctrine that persons accused of crime are presumed to be innocent until proven guilty, have sometimes said that the presumption is in the nature of evidence, or an instrument of proof, but it has never been deemed necessary to go into a disquisition upon the foundation of the doctrine in instructing a jury. In the case of *Coffin* v. *United States,* 156 U. S. 432, the language cited from the opinion at page 460 was merely a portion of the court's comment upon the ruling of the trial judge refusing to instruct the jury that the law presumes an accused person to be innocent until proven guilty. There was no such refusal or omission in this case. The court charged the jury as follows: "In the absence of such proof he must be acquitted. It is the presumption of the law that the defendant is innocent of the crime charged; and that presumption of the law must prevail in favor of defendant's acquittal, if the evidence before you does not entirely satisfy your minds and beyond all reasonable doubt that he committed the crime charged." And the substance of this charge was repeated in a different form in other connections.

The fault indeed, if any, to be found with the charge of the court in respect to this and other propositions applicable to criminal trials generally, is that it was too full and elaborate.

Defendant's proposed instructions 30 and 50 were in further elaboration of the presumption of innocence and reasonable doubt. They were fully covered by the charge of the court, for which reason they were properly refused.

The claim that the court erred in modifying defendant's proposed instruction 46 is disposed of by what is above said regarding the modification of his requested instruction 11; the instructions and modifications are mere repetitions—the one of the other.

The claim that the court erred in modifying instruction 47 is based upon counsel's erroneous statement of the evidence, and his erroneous view as to what constitutes the *corpus delicti.* It is without merit.

The court did not err in admitting the dying declarations of Rice. The evidence upon which this ruling was based was sufficient to show *prima facie* that Rice at the time of the declaration was fully persuaded that he was about to die. It tended to prove that Buckley—the man who wore the white hat—did the shooting, and the fact that Buckley did the shooting was material in connection with the other evidence in the case against Moran.

Neither did the court err in admitting the evidence of Moran's admissions. The fact that he at first, and repeatedly, denied that he was present at the time of the murder does not bring his case within the principle of the Teshara case—*People v. Amaya,* 134 Cal. 532. Teshara being accused of the murder by the dying man at once repelled the accusation and never afterwards made an inconsistent admission. The evidence offered and admitted against him was purely and simply the declaration of the murdered man made at a time when he was not shown to have resigned all hope of recovery. But Moran finally admitted that he was at the scene of the murder, and this made his previous denials of that fact evidence against him on the same principle that his flight was evidence against him.

Nor did the court err in admitting those portions of the evidence of Mr. Piatt respecting the absence of his daughter from the state, which was objected to by defendant. This evidence was offered for the purpose of laying the necessary foundation for the introduction of the daughter's deposition. It was, in substance, that he had taken her to the City of Mexico for the sake of her health, and left her there in the care of her mother. The matters particularly objected to were his statement as to the intention of the mother, with respect to the duration of her stay in Mexico, and his refusal to let his daughter come back with him when he returned. For the purpose for which this evidence was offered it was material and competent.

The deposition of Erline Piatt was properly admitted. The first objection to its admission was that there was no compe-

tent proof that she was beyond the jurisdiction of the court. We think the evidence on this point, independent of the matters above discussed, was quite sufficient to prove her absence at the City of Mexico, and certainly sufficient to show that she could not be found here. It is next objected that the deposition was not properly certified according to the requirements of the Penal Code. It abundantly appears from the record before us that there was a certificate to the deposition, but the certificate has been omitted from the bill of exceptions. Counsel contends that in view of his objection, that the certificate was not in legal form, it was incumbent upon the people to show affirmatively that it was in proper form, and for that purpose to have it incorporated in the record. In support of this proposition he cites *People* v. *Fisher,* 51 Cal. 319, and *People* v. *Buckley,* 116 Cal. 148. Those were cases in which it was held that when the defendant in a criminal case has moved for a new trial upon the ground that the evidence does not sustain the verdict and his motion has been overruled the order will be reversed on appeal, if the record does not contain some evidence to sustain the charge, and the distinction between the question there decided and the question presented here is very plain. There is a presumption of innocence which cannot be overcome except by proof of guilt. Hence the necessity of evidence of guilt to sustain a finding of guilt. But with reference to the performance of official duty, the presumption is that it has been duly performed, and the party objecting that an official certificate is not in due form, if he seeks to have an adverse ruling reviewed, should see that the certificate goes into the record. In the absence of the certificate we must presume it was in due form. If he puts it into his proposed bill of exceptions the court cannot refuse to allow it without a gross violation of his rights. The remaining objection to the deposition is that the evidence which it contains is irrelevant and immaterial. This objection is based upon the assumption that evidence tending to prove that Buckley fired the fatal shots is not material to the charge against Moran, but it has been shown that in connection with the other evidence it is highly material. A separate objection to a part of the deposition is that it was given upon cross-examination by counsel for appellant's co-defendants. The deposition consisted of the testimony of the witness before

the committing magistrate. All the defendants were jointly examined and all were present. The direct testimony of the witness was confined to what occurred on the car as it approached the scene of the murder and what occurred at that spot. It was all of the *res gestæ,* and the cross-examination, so far as it went beyond the *res gestæ,* was confined to an effort to show that the witness was inaccurate and forgetful as to details and uncertain as to the identity of the persons accused. It was in no manner directed against Moran, but to the extent that it may have succeeded in weakening the force of the direct evidence was for his advantage. And, besides, if the cross-examination by a co-defendant had brought out any material evidence against him, it cannot be perceived that he would have any more right to complain than if the same fact had been elicited by a question put by the district attorney.

The court did not err in admitting evidence of Moran's statement that some one in the saloon spoke of going out to "get a scab." The words were spoken in his presence, and he immediately acted upon the suggestion. He went with the others to wait for the car conveying the "scab," and at the concerted signal boarded that car. Enough has already been said to show the competency and materiality of this evidence. Counsel cites *People* v. *Irwin,* 77 Cal. 502; *People* v. *Lee Dick Lung,* 129 Cal. 491; *People* v. *Colburn,* 105 Cal. 648, to sustain his contention on this point, but we cannot see that those cases have the slightest bearing on the question.

A witness for defendant, who testified to his good reputation for peace and quietness, stated that he had never heard anything against his character in that particular. On cross-examination he was asked if he had not heard within the previous eighteen months that defendant had been arrested for vagrancy and disturbing the peace. After the witness had answered in the negative counsel for defendant objected and took an exception to the conduct of the prosecuting attorney in putting the question. The prosecuting attorney immediately withdrew so much of the question as related to an arrest for vagrancy, but insisted on an answer as to an arrest for disturbing the peace, and the defendant's objection to the question in its modified form was overruled by the court. The ruling was clearly correct, the question as modified being

strictly in line of cross-examination. The cases cited by counsel to the proposition that it was misconduct in the prosecuting attorney to ask about the arrest for vagrancy do not sustain him, the one nearest in point—*People* v. *Crandall,* 125 Cal. 134—being distinctly against him.

Finally, it is contended that the court erred in refusing to instruct the jury that evidence of verbal admissions are to be received with caution. Three instructions were requested by defendant embracing this proposition, but each one of them embraced something in substantial addition to the language of the statute enjoining upon the courts the duty of giving this instruction upon all proper occasions.

By section 2061 of the Code of Civil Procedure it is enacted in strict conformity with the constitution that the jury, subject to the control of the court in certain specified cases, are the judges of the effect and value of all evidence addressed to them. But it is further provided in the same section that on all proper occasions they are to be instructed by the court upon certain enumerated matters affecting the weight of evidence. These enumerated cases are exceptions to the general rule prohibiting the court to instruct upon matters of fact, and as exceptions cannot be extended or enlarged. In the enumerated cases only can the court instruct as to the weight of evidence, and nothing of substance can be added to the instruction which the statute prescribes. The statute does not say the jury are to be instructed that evidence of verbal admissions is to be received with *great* caution, but only with caution, nor does it authorize the court to enter into any argument or disquisition as to the reasons why this caution should be exercised. When an instruction on this point is asked in the language of the statute, or in language substantially the same without material addition, and the case is a proper one, it is my unalterable opinion, notwithstanding the decision in *People* v. *Wardrip,* 141 Cal. 233, that the court is bound to give it, and that its refusal is cause for reversal on appeal of the party preferring the request. This was clearly decided in *People* v. *Bonney,* 98 Cal. 278, and I can see no reason for departing from that decision. But the court is not only not bound, it has no right, to give an instruction which goes beyond the statute in terms and substance, as all the requested instructions in this case did. *Kauf-*

*man* v. *Maier*, 94 Cal. 282, is direct authority on this point, and what is said in *People* v. *Rodley*, 131 Cal. 258, is an intimation to the same effect.

Upon this review of all the points urged by the appellant, we discover no error in the record, and the judgment and order denying a new trial are affirmed.

Henshaw, J., concurred.

We concur in the judgment, and in the opinion of the chief justice, except as to what is said therein upon the subject of instructing the jury under the provisions of section 2061 of the Code of Civil Procedure. Upon that subject we adhere to the views expressed in the opinion filed in denying a rehearing in *People* v. *Wardrip*, 141 Cal. 233.

Angellotti, J., Van Dyke, J., Shaw, J., McFarland, J.

LORIGAN, J., concurring.—I concur in the judgment. As far, however, as the constitutional point is concerned, relative to instructing the jury as to verbal admissions, I wish to go no further than is stated in *People* v. *Wardrip*, 141 Cal. 233, that such an instruction "states a mere commonplace within the general knowledge of jurors; and we do not think that either the giving or refusing of such an instruction would warrant a reversal."

Rehearing denied.