[Crim. No. 981. In Bank.—December 3, 1903.]

## THE PEOPLE, Respondent, v. WILLIAM H. GLOVER, Appellant.

CRIMINAL LAW—MURDER—SELF-DEFENSE—INSTRUCTIONS—"CLAIM" OF DEFENDANT.—Upon the trial of a defendant charged with murder, who admitted the killing, and relied upon the excuse of self-defense, and requested instructions thereupon, it was proper for the court to preface the instructions given with the statement that they were "based upon this claim of the defendant that he acted in self-defense"; and such use of the word "claim" is not prejudicial, or open to criticism.

ID.—APPARENT DANGER—SUFFICIENT CAUSE FOR BELIEF—INSTRUCTION PROPERLY MODIFIED.—A requested instruction that "a person may repel force by force in the defense of person, property, or life, against one who manifestly intends or endeavors by violence or surprise to commit a known misdemeanor or felony, or either, or to do great bodily injury to his person, and the danger which would

justify the defendant in the act charged against him may be either
real or apparent; and the jury are not to consider whether the
defendant was in actual peril of his life or property, but only
whether the indications were such as to induce a reasonable man
to believe that he was in such peril of person or property; and if
he so believed reasonably [and had sufficient cause so to believe],
and committed the act complained of under such belief, even though
it should appear that the deceased was not armed, you should acquit
the defendant,"—was properly modified by inserting the words
"and had sufficient cause so to believe," and as so modified the
instruction clearly expresses the law.

ID.—PROPER INSTRUCTIONS.—Instructions upon the law of self-defense,
consisting of a concise statement of the language of subdivision 3
of section 197 of the Penal Code, and of excerpts from the language
of the court in *People* v. *Hecker,* 109 Cal. 462, were properly given.

ID.—SEEKING QUARREL WITH DESIGN TO CREATE NECESSITY—APPLICABIL-
ITY OF INSTRUCTION—PROVINCE OF JURY.—An instruction that the
plea of self-defense is not available where a person seeks a quarrel
with the design of creating á real or apparent necessity for killing,
correctly states the law, and is not erroneous, whether it is ap-
plicable or inapplicable to the evidence. Where there was evidence
to which it might apply, the instruction was properly given, and it
was the exclusive province of the jury to determine whether the
quarrel was sought by the defendant with such design.

ID.—FAULT OF DEFENDANT—INSTRUCTIONS CONSTRUED TOGETHER.—An
instruction that "a defendant who justifies under a claim of self-
defense must himself have been without default," and predicating
the absence of fault, as a condition of being justified in acting
under a belief of imminent danger, must be construed in connec-
tion with all of the instructions of which it forms a part, concerning
the conditions on which the right of self-defense may be asserted,—
that he was not the first aggressor, or, if so, that he had endeavored
to decline further struggle and that he had not sought the quarrel
with the design of forcing a deadly issue, or inviting a real or
apparent necessity for killing,—and so construed, the instruction is
limited, pertinent, and applicable.

ID.—MALICE AFORETHOUGHT—INFERENCE FROM CIRCUMSTANCES.—An in-
struction that, "whether the defendant does or does not act with
malice aforethought, is always to be inferred from the circum-
stances surrounding the case," is not subject to just criticism by
the defendant, whether it be considered as standing alone or as
construed with other instructions fully dealing with the subject
of malice aforethought.

ID.—IRRELEVANT TESTIMONY—HARMLESS RULING.—The admission of
irrelevant testimony having no bearing on the case on re-examination
of a witness for the prosecution, where the same matter had been

originally brought out on cross-examination of the witness by defendant's counsel, is harmless.

ID.—CROSS-EXAMINATION—RE-EXAMINATION—EXPLANATION OF CONTRADICTORY STATEMENT—FALSITY.—Where a witness for the prosecution is sought to be impeached on cross-examination by a contradictory statement made immediately after the homicide, which the witness admitted to have made, the witness is entitled on re-examination to explain that such contradictory statement was not true.

ID.—SILENCE OF WITNESS—EXPLANATION OF MOTIVE.—Where the defendant, on cross-examination of a witness for the prosecution, who was a daughter of the deceased, showed that she did not say anything to her father or a doctor who was with him as to the presence of the defendant, she was properly permitted on re-examination to explain her motive for not informing them of the declared intention of defendant to kill her father, that the defendant was watching her with a gun in hand, and that she was afraid that he would kill both herself and her father.

ID.—DYING DECLARATION—RES GESTÆ.—Where the preliminary proof clearly showed that the dying declaration of the deceased was made in the full belief of impending death, it is not objectionable as stating a fact which was part of the *res gestæ*, that when defendant approached the house the deceased was talking with the defendant's brother about a horse-collar.

ID.—WEIGHT OF DEFENDANT'S BROTHER.—It was not prejudicial error to permit the prosecution to ask the defendant's brother, when a witness, as to his weight, where it was obvious to the jury that he was a large man and able physically to have intervened and stopped the killing of deceased, and where he had testified in effect that he did not intervene because he did not think there was going to be any trouble till it was all over.

ID.—STATEMENT OF DAUGHTER OF DECEASED—HEARSAY—FOUNDATION NOT LAID.—It was not error to refuse to permit a witness for the defendant to testify to a statement made by the daughter who was a witness for the prosecution. If it was the same as she made while on the stand, it was inadmissible hearsay; and if different it could not be shown to impeach her testimony, where no foundation was laid on cross-examination for its admission; and where the court offered to allow the defense to recall the witness to lay a foundation, and the offer was rejected, the defense must abide by such rejection.

ID.—IMPOSITION OF DEATH PENALTY—PROVINCE OF JURY.—Where the evidence on the part of the prosecution was such that if believed by the jury they were warranted in finding the defendant guilty of murder in the first degree, it was in the province of the jury to impose the death penalty, and this court cannot interfere with the exercise of their judgment.

APPEAL from a judgment of the Superior Court of Placer County and from an order denying a new trial. J. E. Prewett, Judge.

The facts are stated in the opinion of the court.

F. P. Tuttle, and Charles Tuttle, for Appellant.

U. S. Webb, Attorney-General, and J. C. Daly, Deputy Attorney-General, for Respondent.

LORIGAN, J.—The defendant was convicted of murder in the first degree and sentenced to death, and from the judgment and order denying his motion for a new trial appeals.

The homicide consisted in the killing of one Frederick Nierhoff, at his home in Placer County, on the afternoon of June 11, 1902. The defendant was engaged with the consent of her father, the deceased, to be married to his daughter,— Agnes Nierhoff,—a young girl fourteen years of age, and the claim of the prosecution was, that the killing upon the part of defendant was prompted by revenge for having been ordered off his premises, the day before, by the deceased.

On behalf of the defendant it was insisted that the killing was done in necessary self-defense.

In the briefs no point is made as to the sufficiency of the evidence to sustain the verdict, but it is insisted that the court erred in modifying certain instructions asked by the defendant; that it misdirected the jury in certain other instructions given of its own motion, and complaint is made, also, of rulings of the court in the admission and rejection of evidence.

Upon the instructions:—

1. The defendant proffered many instructions on the plea of self-defense, premised generally with the statement that, "the defendant in this case admits the killing and excuses himself on the ground of self-defense."

The court, after reading this preliminary statement to the jury, and immediately before giving the instructions tendered, said: "I am now about to give you a number of instructions based upon this claim of the defendant that he acted in self-defense."

It is insisted that the use of the word "claim" was prejudicial to the defendant.

There is no substantial merit in this point. Nor is the use of the word even open to criticism. Used either colloquially or definitely, it means the assertion of a right, and in the context, where found, it refers to the assertion by the defendant that the killing was excusable because committed by him in the exercise of the right of self-defense. Whether in instructing a jury upon this asserted right invoked by a defendant, the court uses the terms, "it is insisted," "it is contended," or "it is claimed" on the part of defendant, that the killing was in necessary self-defense, the terms have the same legal equivalent, and mean that, while conceding the killing, yet the defendant asserts that he had a right to slay the deceased in necessary self-defense.

In the case of *People* v. *Iams,* 57 Cal. 118, it will be observed, in that part of the instructions which was given on this plea of self-defense, the lower court used the term "claim" as it was employed in the instruction complained of in the case at bar.

That portion of the instruction in the Iams case, in which this word "claim" is found has, at least since that case was decided, been almost universally given, in its entirety, as an instruction in homicide cases, where the plea of self-defense has been interposed, and notwithstanding the successive appeals to this court in such cases, our attention is not called to any case in this court in which the correctness of its use has even been questioned.

In the limited criticism which counsel devotes to the instruction, he neither advances good reasons against the use of the term employed, nor suggests, or indicates, any language which in his judgment, would be more appropriate, or less objectionable, nor has he referred us to any authority, in the wide range of criminal law, where a similar instruction has either been censured or disapproved.

2. The next ground of complaint arises from the modification by the court of two instructions requested by the defendant, on the law of self-defense. Only one of these need be referred to at length, in order to illustrate the point common to both. The court instructed the jury: "A person may repel force by force in defense of person, property, or life, against one who manifestly intends or endeavors, by violence

or surprise, to commit a known misdemeanor or felony, or either, or to do great bodily injury to his person, and the danger which would justify the defendant in the act charged against him may be either real or apparent, and the jury are not to consider whether the defendant was in actual peril of his life or property, but only whether the indications were such as to induce a reasonable man to believe that he was in such peril of person or property. And if he so believed reasonably [and had sufficient cause so to believe], and committed the act complained of under such belief, even though it should appear that the deceased was not armed, you should acquit the defendant." The modification complained of in this, and the other instruction referred to, consisted in inserting therein the words, "and had sufficient cause so to believe," and giving them as so modified. The modification was proper, and the instructions as modified clearly express the law. Counsel claim that the instructions as modified lacked precision and clearness, and were confusing, but do not point out in what particular they are open to these objections, and we are unable to discover them.

The instructions as given informed the jury, that it was not enough that there should exist in the mind of the defendant a belief that he was in actual peril, but that the indications and circumstances as they presented themselves when he acted upon them, must have been such as to have furnished sufficient cause for such belief, and that the test to be applied by the jury, in determining whether these indications of peril were such as to furnish sufficient cause for the belief, was not whether defendant so believed therefrom, but whether a reasonable man, placed in the situation of the defendant, would have been justified from such appearances in so believing.

The court doubtless considered, and there was ample room for it, that the language in the proffered instruction, "and if he so believed reasonably," was susceptible of being construed by the jury to mean, that the actual belief of the defendant from the appearances of peril, as he viewed them, should exclusively govern their determination of whether he acted in self-defense or not, and for the purpose of obviating any misconception upon that point, inserting the words, "and had

sufficient cause so to believe.'' It was the duty of the court to
so formulate the instruction as to obviate any danger of the
law being misunderstood, and as clearly as possible inform the
jury that, in order to justify the defendant under his plea of
self-defense, it must appear not only that defendant actually
believed himself in deadly peril, but that as a reasonable man
he had sufficient grounds for his belief, and as so modified
the court correctly declared the law.

A person may have a lively apprehension that he is in
imminent danger, and believe that his apprehens.on is based
on sufficient cause and supported by reasonable grounds;
that such apprehension is reasonable and warranted from ap-
pearances as they present themselves to him. If, however,
he acts on these appearances, he does so at his peril, because
the law leaves it to no man to be the exclusive judge of the
reasonableness of the appearances upon which he acts, but
prescribes a standard of its own, which is, not only did the
person acting on the appearances himself believe that he was
in deadly peril, but would a reasonable man, situated as the
defendant was, seeing what he saw, and knowing what he
knew, be justified in believing himself in danger.

Recognizing the error into which the jury might fall, and
with the correct rule of law in view, the court properly modi-
fied the instruction.

It is insisted that the court erred in giving instructions num-
bers 24, 25, and 26. It is not insisted that they declare in-
correct principles of law, but it is claimed that the first two
are too broad, and that there was no evidence in the case to
justify the last.

Instruction number 24 is a concise statement of the lan-
guage of the Penal Code (sec. 197, subd. 3), and specifies the
conditions under which the right of self-defense can be in-
voked. It is invariably given where the right of self-defense
is asserted. Instruction number 25 is an excerpt from the
language of the court in *People* v. *Hecker,* 109 Cal. 462, and
is also applicable under the plea of self-defense.

Instruction number 26 is also an excerpt from the same
case, and under it the jury were informed that the plea of
self-defense is not available where a person seeks a quarrel,
with the design of creating a real, or apparent, necessity for

killing. This last instruction, defendant insists, should not have been given, because he claims there was no evidence in the case upon which to predicate it. Even so, this of itself would not constitute error. As a general proposition of law, the doctrine announced in the instruction is correct. The most that can be said against it is, that it embraces an abstract principle, not specially relevant to the facts in the case at bar, but given with other full and clear instructions upon the same branch, and which were applicable. If, in fact, there was no evidence to which it applied, it could not be considered by the jury. There was evidence, however, to which the pertinent instructions given on the same subject, and in the same general line, could be applied, and it must be assumed that the jury employed their deliberations in considering the evidence under those principles which were applicable, rather than that they fritted away their time in considering abstract principles to which it was inapplicable.

Nor are we prepared to say that there was no evidence to which the instruction could be addressed. There was evidence in the case tending to show that defendant had secreted himself in the house of deceased, with the expressed intention (undisclosed to the deceased) of killing him; that while deceased, and the brother of defendant, were conversing at the barn near the house, the defendant left the house, taking with him a rifle belonging to the deceased, which he had found therein; that he proceeded towards the deceased with the weapon held in position for action; that while no word was spoken by him as he approached, yet his appearance and actions were sufficient to call forth an exclamation from defendant's brother and the deceased, directed to him, "not to shoot"; that while he was approaching, according to his own story, and without his having uttered a word to deceased, or made any hostile demonstration, or intending to do so, the deceased rushed towards him, picking up a club on his way, and endeavored to take the rifle from him, and tried to strike him with the club, when, in self-defense, he fired the fatal shot.

In the face of the evidence, it was the exclusive province of the jury to say, whether defendant's approach towards the deceased was with the innocent intention which he avowed,

or whether it was with a preconceived intention to kill him, but made under such circumstances as to invite an appearance of hostile attack, which defendant would subsequently disclaim, but upon which the deceased would presumedly act, and endeavor to repel, with such weapon as chance might provide, yet, with the certainty on defendant's part that the deceased could, in the emergency, provide himself with no means which could meet his superior and effective weapon, deliberately provided for the purpose, or frustrate or foil his purpose to kill.

Whenever an assault is brought upon a person by his own procurement, or under an appearance of hostility which he himself creates, with a view of having his adversary act upon it, and he so acts and is killed, the plea of self-defense under such circumstances is unavailing.

Waiving all other considerations concerning this challenged instruction, it was, we think, properly given to the jury under the evidence referred to.

4. The legal accuracy of instruction number 28 is questioned. It reads: "A defendant who justifies under a claim of self-defense must himself have been without default before he can claim the full protection of the law. In such case, if you find from the evidence that the defendant was without fault, and while so without fault, was placed by the deceased under circumstances sufficient to excite the fears of a reasonable man that the deceased designed to commit a felony or some great bodily injury upon him, and as to afford grounds for a reasonable belief that there was imminent danger of the accomplishment of such design, he was justified in acting under such fears."

Particular exception is taken to the use of the language, "must himself have been without default before he can claim the full protection of the law." This, in counsel's estimation, is also entirely too broad a statement of the principle it contains. No question is made, or can be made, of its legal accuracy. (*People* v. *Westlake,* 62 Cal. 307.) It is only the amplitude of this statement that is complained of. Counsel suggests that the jury, under it, might feel warranted in taking into consideration other acts of the defendant, aside from the circumstances of the killing itself. The broadness

CXLI. Cal.—16

of language which counsel complains of arises only when the
particular sentence adverted to is cut out from the context
and examined alone.  This, however, is not the approved or
proper way to examine instructions, or parts of instructions.
It will not do to take isolated or excised sentences, or phrases,
and so put them to the crucial test.  Instructions, for the
purpose of determining whether they correctly state the law
or not, are to be considered in their entirety, and the language
used in each is to be considered, not only with reference to the
special instruction of which it is a part, but in connection
with all the instructions, precedent and subsequent to it, and
particularly with reference to all instructions bearing on the
same main legal proposition of which it forms a part.  Ex-
amining the instruction complained of, under this rule, we
find it immediately preceded by instructions concerning the
conditions under which the right of self-defense may be as-
serted—that he was not the first aggressor, or, if so, that he had
endeavored to decline further struggle; that he had not
sought the quarrel with the design of forcing a deadly issue,
or creating or inviting a real or apparent necessity for killing,
which, if present to one without blame, would justify the
homicide;—these were the conditions to which the language
complained of had reference, and to which the terms "de-
fault," and "fault," as also used in the instruction, applied.
This is obvious, too, when the terms are considered in rela-
tion to the context of the special instructions where they are
found; they there apply to the circumstances and situation of
the deceased and defendant at the time the killing occurred,
and under which he asserts that he was justified in taking the
life of deceased.  Considered with reference to the preceding
and subsequent instructions to which it applies, and also with
relation to the particular instruction of which it is a part, it is
limited, pertinent, and applicable.  So, even if the language
of the instruction were open to the criticism that it states the
principle too broadly, it appears so only when examined aside
from the context in which it is found.

5. Appellant insists that the court erred in instructing the
jury that, "whether the defendant does, or does not, act with
malice aforethought is always to be inferred from the circum-
stances surrounding the case."

As was said of the previous instruction, this sentence is part of an instruction which, together with various other instructions given by the court, fully deals with the matter of malice aforethought—the great criterion distinguishing murder from other killing.

Standing alone, however, we perceive no ground for criticism. Malice may always be inferred from the circumstances in the case—the evidence presented and considered by the jury. If there are other additional legal rules for determining it the defendant cannot complain because the jury were restricted to one of such rules. The restriction in this regard was favorable to him, and he has no reason to complain of it.

Exception is taken to the language of some of the other instructions in the case, but, as they are not supported in the briefs by either argument or authority,—simply referred to,—we have not called particular attention to them. In view, however, of the gravity of the case, we have examined them and find them correct.

The court, upon its own motion, fully and fairly instructed the jury upon all matters necessary for their consideration, and gave every instruction requested by the defendant— which constituted half of the instructions given—as presented, with the single modification in the two instances complained of. As far as the instructions given in the case are concerned, taken as a whole, they are correct and fair, and defendant has no ground of complaint on their account.

Certain errors of law are insisted on, and we will now consider them.

6. Agnes Nierhoff, daughter of deceased, the girl to whom defendant was engaged, was a witness for the prosecution. She and defendant had been driving on the Sunday prior to the homicide. On redirect examination by the prosecution, over defendant's objection, she testified that, while out driving, at defendant's suggestion that he wished to get his mother's picture and a horse-collar, they drove to the ranch of Oscar Glover, the brother of defendant. This ruling, if error, was harmless. The testimony had no bearing whatever on the case, and there is no pretense that at this time there was any ill-feeling between defendant and deceased. Aside

from this, the matter had been originally brought out in the cross-examination of the witness by defendant's counsel.

7. This same witness—an eye-witness to the tragedy—upon the trial and on behalf of the prosecution, testified against the defendant; her testimony tended to show that the killing of her father by the defendant was unprovoked, deliberate, and premeditated.

On cross-examination the counsel for defendant confronted her with a statement, made immediately after the homicide, contradictory of her statement against him on the trial, which previous statement, if true, was exculpatory of the defendant. She admitted on cross-examination that she made such statement. On redirect examination, over defendant's objection, the witness was permitted to testify that these prior statements were untrue. Counsel suggests that the prosecution should have been restricted to proving the untruth of the statement by competent and relevant testimony, and not by the sweeping statement of the witness. But the testimony of the witness was both competent and relevant on this point. She best of all knew which of her statements was true. She had given the one and was confronted by the other; they were inconsistent, and she had a right to explain, under section 2052 of the Code of Civil Procedure, her former statements. If, in the explanation, she declared that her former statements were untrue, this certainly was an explanation, as far as it went, and no reasonable objection could be made to this method of explaining it.

Counsel's objection, too, was, that it was not cross-examination, irrelevant, and immaterial. It was certainly proper redirect examination because the contradictory statement was brought out by counsel for defendant on cross-examination, and it is material and relevant in all trials to properly show the credibility, or want of credibility, of a witness, and this end is attained in some degree by the declaration of the witness herself that she has made prior false or contradictory statements on the same subject.

8. This same witness was asked on redirect examination why she had not told her father and one Dr. Dozier, who visited him on the premises, and with whom she conversed, of the presence of the defendant in the house, and of his declared

intention of killing her father. The witness, over the objection of defendant, answered that during all the time the defendant was watching her with gun in hand, and she was afraid if she said anything to either her father or Dr. Dozier, he would kill both herself and her father. The inquiry was proper. The defendant on cross-examination had brought out the fact that she did not converse with the doctor when he came, or inform her father of the defendant's presence. As the natural inquiry would be, why did she not do so, she had a right to explain her conduct in this regard. The objection of defendant was, that her motive in not telling her father, or the doctor, should not be a question for consideration by the jury. As motive is the mainspring of human action, when it is ascertained the jury can all the more readily determine whether given conduct was inspired by it or not.

We have thus far adverted particularly to such assignments of error as we deem worthy of special mention.

Several others are relied upon, but we do not think they call for any extended consideration. The claim that there was not sufficient proof to warrant the admission of the dying declaration of deceased in evidence is not tenable. The proof is all one way, and conclusive on the point, that it was made by the deceased in the full belief of impending death. Nor can any exception be taken to the statement by the deceased in his dictated dying declaration that, when defendant approached from the house, deceased and defendant's brother Oscar were talking about a horse-collar. The testimony of all parties shows this to have been the fact, and besides, as a fact and circumstance immediately attending the homicide, it was part of the *res gestæ*. There was no prejudicial error in permitting the prosecution to ask the witness Oscar Glover his weight. Even conceding, as defendant contends, that it was for the purpose of proving that he was a large man physically, and able to have intervened and stopped the killing of deceased, yet this was all apparent to the jury without inquiry. They saw the witness, and could judge for themselves of his physical proportions. He did not intervene because, he testified in effect, that he did not think there was going to be any trouble until it was all over. It was not error for the court to refuse to allow the witness Charles Glover to

testify as to any statement made by the witness Agnes Nier-hoff to him concerning the homicide. If it was the same as she made on the stand, it was inadmissible as hearsay. If contradictory, it was in the nature of impeachment, and her attention should have been first called to it while on the stand, pursuant to section 2050 of the Code of Civil Procedure. In sustaining the objection, the court offered to allow the defense to recall the witness Agnes, and lay the proper foundation for the introduction of the testimony of Charles, but the defense declined to avail itself of the offer. This offer of the court gave the defendant all he was entitled to, and having rejected the benefit of it he must abide by the rejection.

This embraces all the objections which are made to the rulings of the court, and, in our judgment, none of them are well taken.

While counsel for defendant in their briefs disclaim any intention of questioning the sufficiency of the evidence to warrant the guilt of the accused, they contend that it is not sufficient to warrant the infliction of the death penalty, and in this regard it is insisted that the jury, actuated by prejudice, rendered a verdict fixing a higher degree of crime than the facts, susceptible of belief, justified. We find no justification in the record for this claim of counsel. There is nothing in the record tending to show that the jury were in any respect actuated by prejudice against the defendant. We cannot invade the province of the jury and substitute our judgment for theirs, as to the sufficiency of their finding on controverted facts. There may, it is true, arise an exceptional case, where the testimony in behalf of the prosecution is so improbable and incredible that the court, convinced of its falsity or absolute insufficiency to warrant a verdict of guilty, would deal with it as a matter of law. This, however, must be an extreme case, and such is far from being suggested by the record before us. There was evidence on the part of the prosecution which, if believed by the jury, warranted them in finding the defendant guilty of murder in the first degree. Their verdict shows them to have believed it, and as the law leaves it to the sound and discriminating judgment of the jury what penalty they shall award for that degree of

crime, we cannot interfere with the exercise of that judgment, even where the penalty is death.

Finding no error in the record, the judgment and order appealed from are affirmed.

McFarland, J., Angellotti, J., Shaw, J., Van Dyke, J., Henshaw, J., and Beatty, C. J., concurred.