PEOPLE, PLAINTIFF AND APPELLEE, *v.* LANAUSSE, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Guayama in a Prosecution for Voluntary Homicide.

No. 1818.—Decided June 2, 1922.

HOMICIDE—JURY TRIAL—SELECTION OF JURORS.—The law does not require that a complete panel of twenty-four jurors should be available before proceeding to select the twelve jurors who are to try the case.

ID.—ID.—CHALLENGING JURORS.—The ordinary panel having been exhausted and special panels having been summoned, a general challenge to the formation of the jury can not be made on the ground that all of the persons whose names were drawn were not summoned, and whether or not the defense had exhausted its peremptory challenges does not alter the rule, although in some cases that fact might be important in causing the court to be more liberal in the consideration of the general challenges.

ID.—DISCRETION OF COURT.—To constitute an abuse of discretion some injustice to the defendant must either positively appear or be a necessary inference from the record.

ID.—ID.—MANSLAUGHTER—JUSTIFIABLE HOMICIDE.—In a homicide case after it is shown that the defendant did the shooting the defendant has at least the duty of showing to the court that there is some real evidence tending to show that the homicide, otherwise amounting to manslaughter, was justifiable. If the evidence merely discloses the possibility that the defendant shot justifiably, that fact does not entitle him to an instruction on justifiable homicide.

ID.—ID.—HOMICIDE—EVIDENCE.—When there is no evidence of self-defense or that the homicide was justifiable, evidence of the victim's reputation as a dangerous person is not admissible.

The facts are stated in the opinion.

*Messrs. L. Tormes* and *R. Martínez Nadal* for the appellant.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

This is another of the many cases in which the appellant has failed to file a separate assignment of errors as required by Rules 42 and 43 of this court. Nor was there a brief statement of the facts. No attempt is made to sum up the evidence.

Here the appellant charged with murder was convicted of manslaughter. At the inception of the trial he presented a motion for a change of venue apparently on the ground that there was a strong prejudice in Guayama against the defendant by reason of the political struggle which lay at the basis of several violent deaths revealed by the record. This motion for a change was denied by the court and its denial is not made the subject of an assignment of error. The strong presumption that the citizens of his own community will do justice to a defendant would persist, after the overruling of the motion for transfer, but there is nothing in the record anywhere beyond the statements of one talesman which would justify the theory that there was such a prejudice in Guayama against the appellant. Merely because feeling was high at election times does not justify counsel in assuming that in the crucial moment of a trial citizens will not do their duty as jurors. Furthermore, there is nothing to show the particular nature of the jury that tried the defendant, nor did counsel in their motion for a new trial or otherwise, show

that any juryman selected was prejudiced, or even that any juryman was in fact of a different political complexion from the appellant. We say this by introduction because in the argument of the first assignment of error counsel assume, without a showing, that somehow or somewhere some kind of prejudice did exist.

The first assignment is concerned with the overruling by the court of a motion of the defendant, in the nature of a challenge, attacking the composition of the jury and more particularly the manner in which two extraordinary panels were called after the first regular panels were exhausted. This exhaustion took place on the morning of a particular day and the marshal was ordered to have two new panels ready by two o'clock of the afternoon, summoning, if necessary, the talesmen from the outlying districts by telephone or telegraph. At two o'clock, however, only seven talesmen appeared, four out of the first special panel and three out of the second special panel. These seven names were placed in the urn by the secretary and then each of the jurors was made to answer on his *voir dire* without any immediate objection by the defendant that the list was incomplete. It was only after the jury was apparently complete that the challenge to the array was made. The appellant, showing that the talesmen from Aibonito, Barranquitas and Cidra were not summoned, complains that the drawing made and the jury formed in this way was completely irregular and void. The marshal examined testified that it was impossible for him in the period named to have assembled the other talesmen before the court in time.

Sections 201, 202 and 212 of the Code of Criminal Procedure provide as follows:

"Section 201.—The officer of the court, as soon as he receives the list of jurors drawn shall summon the persons named to attend the court at the time mentioned in the order, by leaving written notice to that effect at the jurors' places of residence, or by giving personal notice to each of them, and he shall then return the list

to the court, specifying the names of those who have been summoned, and the manner in which each was notified.

"Section 202.—If a sufficient number of trial jurors duly drawn and notified do not attend or can not be obtained, in the opinion of the judges, without great delay or expense to form a jury, the court, may, in its discretion, direct the clerk to draw from the box, in the presence of the court, the names of as many persons as the court deems sufficient for that purpose.

    ❋      ❋      ❋      ❋      ❋      ❋      ❋

"Section 212.—A challenge to the panel can be founded only on a material departure from the forms prescribed in respect to the drawing and return of the jury or on the intentional omission to summon one or more of the jurors drawn."

The construction of these sections has been before the court in several cases, namely, *People* v. *Morales,* 14 P. R. R. 227; *People* v. *Vázquez,* 20 P. R. R. 338; *People* v. *Pillot,* 20 P. R. R. 353, and *People* v. *Juliá,* 25 P. R. R. 238. In the first named, after very careful consideration we held, Justice McLeary writing the opinion, that the law does not give the accused a right to demand that a complete panel of twenty-four jurors should be available before proceeding to select the twelve jurors who should try the case and that the summoning is necessarily dependent on the exigencies of the situation, the residence of the persons and the ability of the marshal to find them in time without delaying the business of the court; that in order that a trial may end the court should not be subject to the delays of summoning the whole panel. In other words, that the formation of the panel is largely a matter in the sound discretion of the trial court, as brought out in the *Vázquez, Pilot* and *Juliá Cases, supra.* Counsel draws attention to the fact that in the *Morales Case* and others the defense did not exhaust its peremptory challenges, and that this omission played a role and plays a role in the decision of courts. The *ratio decidendi* of the *Morales Case* did not depend upon the exhaustion of the challenges, although in some cases we

can see how that fact might be important in causing the court to be more liberal in the consideration of general challenges.

Counsel concede that the jurisprudence shows that the acceptance of these talesmen was one within the sound discretion of the trial court, but claim an abuse of discretion depending in its essence on the alleged existence of prejudice in Guayama and especially in the regions of the plains as distinguished from the mountains like Aibonito, Barranquitas and Cidra. We have mentioned that the only fact in the record to which counsel have drawn attention as tending to show actual prejudice was the statement of one talesman. He said he had no personal knowledge of the case and was confronted with a petition wherein he had joined in asking for a transfer on the ground that a jury could not be found in the district who were unprejudiced. He said under oath that he signed the petition without seeing it. The court excused him. It was evident that he was not a fit juryman. But it transpires also that it was alleged in the petition that an unprejudiced jury could not be found in the district. Hence summoning persons from Aibonito, Barranquitas and Cidra, also part of the district, would avail the defendant very little. We do not find in the record furthermore any attempt specifically to challenge the talesmen from the plains on account of any alleged prejudice. No attempt was made to challenge any juryman for cause by reason of his residence in the city of Guayama or the like. To constitute an abuse of discretion some injustice to the defendant must either positively appear or be a necessary inference from the record. We find neither.

This was a case where two bands of men, one composed of socialists and republicans to which the defendant belonged and another group composed of unionists, met on the highway. Alvarado, alleged leader of the unionists, was killed and there was testimony of eye-witnesses tending to show that the appellant shot at Alvarado and that from the resulting wound Alvarado died. Each of the groups accuses the other of start-

ing the difficulty. There was some evidence that the unionist group was trying to block the way. There was other evidence that both groups were traveling in autombiles and that neither would yield to the other, although at first there was some attempt to arrive at an understanding. Somebody started to shoot and thereafter a number of shots was fired. It was apparently more or less of a pitched battle. There was undisputed testimony that Alvarado shot and killed another man, but the evidence of the government tends to show that he drew his revolver and shot only after he was wounded; that he shot while retiring. The evidence of the defense was that Lanausse did not fire the shot that killed Alvarado; that the defendant bore no weapon, and while some of the defendant's witnesses say that the defendant was near the scene of action, that he was not present at he immediate spot where the shooting took place. The theory of the defence was that Lanausse did not fire the shot that killed Alvarado. The witnesses of the government say that the defendant fired the first shot. The defence gave some testimony tending to show that it was Alvarado who fired first. One witness of the government, a policeman, testified that the defendant had said or admitted that he had fired at the unionist group because that group had fired at the group among whom he was.

The defendant presented the following instruction which was denied by the court:

"If the jury believe that Luis Alvarado was killed or received the bullet that caused his death at the moment when he was attempting to kill or to inflict great bodily injury upon any person or to commit a felony, the shot received by him then and there and the act of the person who shot him was justified."

This denial is made a ground of error.

We are in accord with the appellant that, no matter what was the initial theory of the defence, if facts should transpire at the trial tending to show a justifiable homicide, a defendant is entitled to an instruction which would permit the jury,

believing the facts, legally to acquit him.   In a homicide case.
once it is shown that the defendant did the shooting, the
defendant has at least the duty of showing to the court that
there is some real evidence tending to show that the homicide,
otherwise amounting to manslaughter, was justifiable.   We
say ''real evidence'' and we mean thereby that it is not enough
that the evidence merely discloses the possibility that the
defendant shot justifiably.   The appellant maintains that
there was evidence tending to show that Alvarado was shoot-
ing at the opposing group and there was evidence that de-
fendant shot in reply, and he invokes section 209 of the Penal
Code, as follows:

''Homicide is also justifiable when committed by any person in
any of the following cases:

''1. When resisting any attempt to murder any person, or to
commit a felony, or to do some great bodily injury upon any
person; or,

''2. When committed in defense of habitation, property, or
person, against one who manifestly intends or endeavors, by vio-
lence or surprise, to commit a felony, or against one who manifestly
intends and endeavors, in a violent, riotous or tumultuous manner,
to enter the habitation of another for the purpose of offering violence
to any person therein; or

''3. When committed in the lawful defense of such person, or
of a wife or husband, parent, child, master, mistress, or servant of
such person, when there is reasonable ground to apprehend a design
to commit a felony, or to do some great bodily injury, and imminent
danger of such design being accomplished; but such person, or the
person in whose behalf the defense was made, if he was the assailant
or engaged in mortal combat, must really and in good faith have
endeavored to decline any further struggle before the homicide was
committed; or,

''4. When necessarily committed in attempting by lawful ways
and means to apprehend any person for any felony committed or in
lawfully suppressing any riot, or in lawfully keeping and preserving
the peace.''

But there is no evidence in the record to show that the de-

fendant shot to prevent the commission of a felony or in defence of another. Going further we may say that there are no circumstances in the record from which such a conclusion ought reasonably to be drawn. There is not the slightest evidence to show that the defendant shot at Alvarado or any other person in the unionist group to prevent further shooting. His own alleged admission shows that he shot back, but not that anybody was in peril. If a man shoots at another the latter is not legally entitled to shoot the former, unless the return shot is designed to prevent an act forbidden by the law. Not only was there no evidence of such a justifiable shooting, but the solicited instruction itself is defective in omitting necessary elements. Merely because a man is committing a murder or a homicide does not justify his being killed, unless he was killed to prevent a felony or something equivalent. One may not be killed because of the immediate commission of a felony, but to prevent one. Frequently a policeman, for example, will shoot a person to prevent a felony and that such was his object will generally appear. A man may not excusably shoot back out of revenge. The statement of Lanausse that he shot back shows no purpose, to say nothing of an excuse. *Non constat* that he shot at non-combatants in the unionist group.

Of course, if there had been any evidence tending to show that Lanausse shot in self-defense, a different situation would be produced. In *People* v. *Sutton,* 17 P. R. R. 327, we examined the scope of section 209 and among other things approved the statement in *People* v. *Glover,* 141 Cal. 233, that a person may repel force by force in defense of person, property or life, against one who manifestly intends or endeavors by violence or surprise to commit a known misdemeanor or felony or to do great bodily injury to his person, and the danger which would justify the defendant in the act charged against him may be either real or apparent and the jury are not to consider whether the defendant was in actual peril of his life or prop-

erty, but only whether the indications were such as to induce a reasonable man to believe that he was in such peril of person or property.

The only remaining error that is discussed is in regard to the exclusion of a bit of evidence. One witness was asked about the reputation of Alvarado as a dangerous person and the evidence was excluded in effect because there was no evidence of self-defense. See *People* v. *Sutton*, 17 P. R. R. 327; *People* v. *Barrios*, 23 P. R. R. 776. As we find no evidence of self-defense or justifiable homicide, we find no error.

The judgment must be

*Affirmed.*

Chief Justice Del Toro and Justices Aldrey and Hutchison concurred.

Mr. Justice Franco Soto took no part in the decision of this case.