PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* EMILIO CHICO, Defendant and Appellant.

No. 4811.   Argued November 29, 1932.—Decided July 19, 1933.

*M. A. Martínez Dávila* for appellant.   *R. A. Gómez, Fiscal,* for appellee.

MR. JUSTICE ALDREY delivered the opinion of the Court.

Emilio Chico has taken this appeal because he was convicted of voluntary manslaughter for having killed Benito Ortiz on December 22, 1931, at a place called Tras Talleres in Santurce, in this city of San Juan.

He assigns several errors by reason of the reception of certain evidence for the prosecution which he claims was improperly admitted by the court; and also urges that the evidence is insufficient to support the verdict of guilty rendered by the jury and the consequent sentence imposed upon him, as from the evidence introduced by the prosecuting attorney it appears that the appellant killed Ortiz in self-defense.

Two witnesses for the prosecution, Jenaro Méndez and Juan Vélez, saw the events to which this cause refers. The statements of both these witnesses are in accord to the effect that Benito Ortiz appeared at the store of Emilio Chico and provoked and insulted him with words which they repeated and which we are not going to reproduce here, but which were greatly abusive, offensive, and provocative; that Emilio Chico told him: "Listen, Benito, go away; I have four

children to take care of; you have no one to look after, and I don't want to have any quarrel with you," and the deceased said: "No, that does not go with me, because I am ready to fight anybody to death, knife against knife"; that Emilio, who stood behind the .counter, insisted that Benito should leave the premises and that when he told him "go away," Ortiz struck at him across the counter with his fist, hitting Emilio in the eye; and that later when the assailant, in a violent attitude attempted to go behind the counter through a door nearby, Emilio fired a shot at him with a revolver he took from a drawer, wounding him, and Ortiz fell to the ground. Neither of these witnesses testified that Ortiz was intoxicated, for the witness Jenaro Méndez upon being asked by the prosecuting attorney as to the condition of Benito Ortiz, stated: "He was . . . I do not . . . I do not know whether he had been drinking; apparently, of course, a man who acts thus." Upon being further questioned by the prosecuting attorney as to whether he had not previously stated that Benito was intoxicated, he answered that apparently the latter had been drinking. The physician who performed the autopsy and to whom the prosecuting attorney asked whether it disclosed that Ortiz had drunk liquor, stated that he could not tell for sure; that he had a slight smell of alcohol. The prosecuting attorney did not show any surprise by reason of the testimony of his witnesses, and the evidence introduced by the defense presented the facts in a similar way as was done by the witnesses for the prosecution. Another witness for the prosecution, Francisco Piñero, a corporal of the Insular Police, stated with reference to Benito Ortiz that he was a courageous and daring man; and that when he arrested Emilio Chico, the latter exhibited a mark (*verdugón*) as if he had received a blow with the fist. Behind the counter and close to it, there was a stall (*aparador*).

The evidence for the defendant does not contradict that for the prosecution, and hence there was no conflict in the

evidence which the jury might have had to adjust. Consequently, the question to be determined is whether such evidence shows that the defendant acted in self-defense in killing Ortiz, for if so, the verdict of guilty rendered by the jury would be contrary to the evidence by reason of manifest error in weighing the same, as urged by the appellant.

In *People* v. *Sutton*, 17 P.R.R. 327, after copying sections 209, 210, and 211 of our Penal Code relating to the justification for a homicide, the following was said:

"Operating under substantially the same provisions the Supreme Court of California has sustained the following instructions:

" 'A person may repel force by force in the defense of person, property, or life, against one who manifestly intends or endeavors, by violence or surprise to commit a known misdemeanor or felony, or either, or to do great bodily injury to his person, and the danger which would justify the defendant in the act charged against him may be either real or apparent, and the jury are not to consider whether the defendant was in actual peril of his life or property, but only whether the indications were such as to induce a reasonable man to believe that he was in such peril of person or property. And if he so believed reasonably, and had sufficient cause so to believe, and committed the act complained of under such belief, even though it should appear that the deceased was not armed, you should acquit the defendant.' (*People* v. *Glover*, 141 Cal., 233.) "

By applying that doctrine to the instant case, we reach the conclusion that the evidence shows that the appellant was justified in killing Benito Ortiz; for he did not provoke the quarrel which resulted in Ortiz' death; he tried to avoid it, but in spite of this he was battered by Ortiz, and used his revolver when Ortiz, after the battering, in a violent attitude attempted to reach the place where the appellant was between the counter and a stall of his small shop, which circumstances show that the appellant could be considered as facing an apparent danger of being seriously assaulted or of losing his life, even though he did not know whether or not Ortiz was armed. It was not a case of a mere suspicion of fear, for the insults, the provocation, the battering, and the

fact that Ortiz tried to reach, in a violent attitude, the place where the appellant was between the counter and the stall, were sufficient to warrant the reasonable belief on his part that he was in danger of being seriously assaulted or of losing his life even though he did not know whether or not his aggressor had a weapon with him. Even though Ortiz had been drunk at the time, a fact which was not established, that would not have removed the danger for the appellant. Perhaps that circumstance, if present, would have increased appellant's danger since it can not be guessed accurately to what extreme intoxication may lead a person.

We think that there was manifest error in the weighing of the evidence by the jury, and therefore, the judgment of conviction based thereon must be reversed and the defendant-appellant discharged.