PEOPLE, PLAINTIFF AND APPELLEE, *v.* IBERN, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Aguadilla in a Prosecution for Murder in the Second Degree.

No. 1961.—Decided May 29, 1923.

SPEEDY TRIAL — CONTINUANCE — DISCRETION OF COURT — BURDEN OF PROOF. — A court has some discretion to grant a continuance *ex parte* and in such a case the burden is on the government to justify the continuance.

ID.—ID.—ID.—The continuance of a trial for a period of less than two months in order to secure the presence of a necessary witness who is endeavoring to recuperate his health is a continuance for just cause.

ID.—ID.—ID.—In this case the defendant moved for a dismissal under subdivision 2 of section 448 of the Code of Criminal Procedure. *Held:* That deducting the 28 days preceding the filing of the general issue plea on July 7th; deducting all or part of the vacation period; deducting all or part of the period of continuance granted because of the absence of a material witness, both the letter and spirit of said section 448 were complied with and good cause was shown in opposition to the defendant's motion.

JURY—CHALLENGES.—It is error to require a defendant to challenge before the jury is complete; but when that action of the court does not compel the defendant to make a single peremptory challenge, the error is harmless.

ID.—DISCRETION OF COURT.—To allow the prosecuting attorney to repeat interrogatories to a juryman is discretional.

MURDER—EVIDENCE—PROOF OF DEATH.—The widow who was with her husband up to the moment of his death was a competent witness to prove his death; therefore, the subsequent admission of an informal death certificate, if error at all, was harmless.

ID.—ID.—LEADING QUESTION.—Permitting leading questions is a matter within the sound discretion of the court and it was not an abuse of discretion to allow an expert witness, a physician, to be asked whether a man is likely to die of septicæmia.

ID.—ID.—RES GESTAE.—When death is caused by the simultaneaous firing of shots by A and B, a revolver admitted in evidence at the trial of B is admissible as a part of the res gestae in the trial of A.

ID.—ID.—MOTIVE.—It is not error to admit evidence which, while throwing no light on the firing of the shots, tends to show the motive for the crime.

The facts are stated in the opinion.

*Messrs. J. Valldejuli, E. González Mena* and *J. Soto Rivera* for the appellant.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

This was a case where the information was presented on the 9th day of June, 1921. To set the arraignment for the 17th day of June as was done was entirely reasonable. On the said 17th day of June the defendant appeared and his counsel asked for thirty days to answer the infor mation. The court granted twenty days and on the 7th day of July, the last day of the extension, the defendant answered and alleged his innocence. The court went into vacation on the first day of August and met again on the 1st day of October. The case was then set for the 19th of October. On the 18th day of October the district attorney appeared and moved for a continuance on the ground of the absence of a material witness. On the 19th day the prosecuting attorney presented an affidavit to support the motion wherein he recited that counsel for defendant was unwilling to admit the fact that would be testified to, namely, that the death to be proved was due to the wound-

ing. The application on the part of the district attorney was to a certain extent *ex parte*. The court continued the case and the trial was begun on the 14th of December and proceeded to a judgment against the defendant. Prior thereto, on the 12th of December the defendant moved for a dismissal on the ground that his trial had not taken place within 120 days after the filing of the information. The court denied the motion, saying that although more than 120 days had elapsed it was because of a just and reasonable cause; that from the record it appeared that the defendant answered the information on July 7, 1921, that on the first of August the court went into vacation until the first of October; that the case being set for the 19th of October at the petition of the government, the court post poned the trial for the reason that Dr. Jorge del Toro, a principal witness in the prosecution, whose testimony was absolutely material, was embarking for the United States to restore his health, as he was suffering from physical exhaustion, his appearance in court therefore being impossible, and the court recited the evidence consisting in the affidavit and the certificates of Doctors Belaval and Lo. pez. The overruling of the motion is assigned as error.

Appellants sets forth that the defendant was ready for trial on October 19th. Assuming or presuming this fact, the government was not. The court must have been genuinely convinced that the postponement was necessary. It seems to be true that although the motion for a postponement was notified to the defendant, the affidavit of the prosecuting attorney supporting it was not. It is a fair probability that the goverment was surprised by the sailing of Dr. del Toro. In any event the said affidavit was on file the day set for trial, October 19. On that day the parties were bound to appear. On that day the court disposed of the motion. The affidavit recited the attempt of the government to have the defendant admit the truth of Dr. del Toro's testimony. It

is not a violent inference then that the defendant knew what was happening and the filing of the motion on the day before the trial was a notice that the trial would probably be postponed. The defendant also mentions that the certificates of Drs. Belaval and López were unsworn. As all these matters took place on the day set for trial, as there is no indication that the defendant made any objection to the alleged informalities or lack of notice either by motion to strike or otherwise, we think they need not be specially considered.

In the case of *Dyer* v. *Rossy*, 23 P. R. R. 718, we were considering the necessities for a continuance as developed in that case, but, barring informalities, the present motion and affidavit showed *prima facie* that Dr. del Toro was a material witness; that he was suddenly leaving and hence no lack of diligence on the government; thus complying with section 202 of the Code of Civil Procedure. It isn't always necessary for a party to specify when he may find a material witness. Section 202 says nothing of this, but the court has inherent power to require the moving party to specify or take depositions or the like.

Furthermore, we think the court has some discretion to postpone *ex parte*. Only the *ex parte* character of the postponement being shown, the burden must be on the government to justify the postponement. We mention this because the appellee says, citing the case of *People* v. *París*, that the presumption is that a postponement by the court is with due cause. This is true in the absence of any showing, but not where the defendant shows a lack of notice. Then the burden is on the government to show that the postponement took place for due cause.

With respect to the materiality of the testimony of Dr. del Toro, the defendant draws attention to the salient fact that Dr. del Toro was not produced at the trial, his deposition not taken and his absence not explained. Neverthe-

less, the court had a right to believe that Dr. del Toro was an essential witness. That the government went to trial finally without a material witness, while it may be a circumstance, does not necessarily show that his motion was "frivolous" or "uncertain." The prosecuting attorney may feel, a material witness still being indisposed or away, that he must prove his case as best he can. That Dr. del Toro was a material and important witness is shown by the fact that appellant is averring in one of his assignments of error that the death in issue was not duly shown to have been produced by the shooting.

By itself, then, to postpone a trial for less than two months to obtain a material witness who is attempting to restore his health, is a postponement for just cause. Hence, if on October 19th, the day first set for trial, the defendant was not then entitled to a dismissal, the subsequent postponement, being reasonable, cannot avail the appellant.

Section 448 of the Code of Criminal Procedure provides:

"The court, unless good cause to the contrary is shown, shall order the prosecution to be dismissed in the following cases:

"1. Where a person has been held to answer for a public offense, if an information is not filed against him within sixty days thereafter;

"2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within one hundred and twenty days after the filing of the information."

On the day of the arraignment the defendant asked for and obtained a postponement until the 7th of July. The court, then, was justified in counting the time from which the statute began to run as from the 7th of July. Before that time a trial was impossible, due to the action of defendant, and this without insisting too much on the fact that the plea finally put in could apparently have been filed immediately and without insisting too much that defendant

asked for a postponement until the 17th of July. Counting from the 7th of July to the 19th of October, 104 days elapsed.

In *People v. Nigaglioni,* 28 P. R. R. 218, construing section 448, *supra,* this court held that in determining whether or not a defendant had been awarded a speedy trial the fact that the particular district court had been in vacation was not, by itself, a just cause for postponing a trial. But we did not say and did not mean to say that the vacation of the court could never be considered in determining whether or not a defendant had obtained a speedy trial.

The trial might have been set between the 7th and 31st of July. But where a trial is postponed towards the end of a term, at the instance of a defendant, considering the criminal cases pending perhaps with preference and other matters like the impanelling of a jury, it is reasonable for a court to postpone a murder case until after its vacations. A certain desire for such a postponement on the part of the defendant might be assumed by the court, and as defendant asked for a long postponement to present his general issue plea, we think this is a case where the vacation period might reasonably be discounted.

Appellant makes a count of 188 days from the 9th of June to the 14th of December. Discounting the 28 days to the filing of the plea on July 7th, discounting all or part of the vacation, discounting all or a part of the postponement by reason of the absence of a material witness, we think both the letter and the spirit of section 448 have been complied with and that good cause to the contrary has been shown in opposition to the motion of the defendant.

The third and fourth assignments of error are as follows:

"Third.—In having ordered the defense to interrogate the jurors before their number was complete, the requisite number of twelve not being present in the jury box.

"Fourth.—In ordering that since all the talesmen had not appeared the jury in this case could be impanelled from among those present."

Two panels of talesmen had been exhausted and in the jury box there were only ten men and the defense insisted that it ought not to be required to challenge any part of them until the box was complete. Four had been accepted, eight were called and only six appeared. It is a little doubtful whether the objection of the defendant was not that a sufficient number of prospective jurymen had not been summoned, rather than that the jury box itself was not full, but we shall give the defendant the benefit of the doubt. The practice is almost universal that before a defendant is required to challenge there should be twelve men in the jury box before him. We have not carefully examined the precedents or the grounds for this practice, but it is a perfectly just and reasonable one, and, in the absence of a showing to the contrary, we shall accept, on the insistence of the appellant, that to require him to challenge at this stage was error. The only question, then, is whether the error is of an essentially different nature than the overruling of a challenge for cause where the defendant has failed to exhaust his peremptory challenges. In various cases citing authorities this Court has decided that the defendant thus waives the error. *People* v. *Morales,* 14 P. R. R. 227; *People* v. *Vázquez,* 20 P. R. R. 328; *People* v. *Pillot,* 20 P. R. R. 353; *People* v. *Juliá,* 25 P. R. R. 238.

In *Hays* v. *Missouri,* 120 U. S. 71, the court says: "He was allowed twenty peremptory challenges and it does not appear that he exhausted them," the court thus applying the principle that it should appear that the defendant exhausted his peremptory challenges. *De non apparentibus et non existentibus eadem est ratio.* See also *Colgrove* v. *Falfurrias State Bank* (Tex.), 192 S. W. 581.

To come then to the remaining question of the nature

of the error committed. In *Hayes* v. *Missouri, supra,* the court, through Mr. Justice Field, said:

"In this country the power of the legislature of a State to prescribe the number of peremptory challenges is limited only by the necessity of having an impartial jury. In our large cities there is such a mixed population, there is such a tendency of the criminal classes to resort to them, and such an unfortunate disposition on the part of business men to escape from jury duty, that it requires special care on the part of the government to secure there competent and impartial jurors. And to that end it may be a wise proceeding on the part of the legislature to enlarge the number of peremptory challenges in criminal cases tried in those cities. The accused cannot complain if he is still tried by an impartial jury. He can demand nothing more. Northern Pacific Railroad v. Herbert, 116 U. S. 642.—The right to challenge is the right to reject, not to select a juror. If from those who remain, an impartial jury is obtained the constitutional right of the accused is maintained. In this case it is not even suggested that the jury by which the accused was tried was not a competent and impartial one. He was allowed twenty peremptory challenges, and it does not appear that he exhausted them."

Other general considerations and our own cases, *supra,* show that the principal test, then, is whether the defendant had a fair and impartial jury, and the presumption was that the twelve men who tried the defendant were good, worthy and unprejudiced citizens unless the defendant makes patent something to the contrary or at least shows that he was forced to trial when he was not satisfied with the jury and had unduly been compelled to use up challenges. *People* v. *Kromphold,* 157 Pac. 602, was a case where defendant had exhausted his peremptory challenges, yet had expressed no dissent from the jury as constituted and no desire to challenge further, and it was held that the improper overruling of a challenge for cause was harmless. We do not need to go so far, because here it does not appear that the defendant exhausted his peremptory challenges. In *Territory* v. *Padilla* (N. M.), 71 Pac.

1084, the challenging, as performed, was a variation from the law of the territory. The court said: "The right is given to challenge peremptorily so that an impartial jury can be secured to try a case. It is a right to reject and not to select," citing cases. The court proceeded, "If an impartial jury is secured it is all that the defendant can ask," citing *Spies* v. *Illinois,* 123 U. S. 168.

In addition we may add that it looks a little as if at some prior period four men had been examined. Likewise, it does not appear that through the conduct of the court the defendant actually made a single peremptory challenge while the jury box was not full.

The remaining part of the supposed errors is disposed of by our decision in *People* v. *Lanausse,* where we held that the summoning and selecting of prospective jurymen was a matter within the sound discretion of the court. No abuse is shown.

Permitting the *fiscal* to repeat interrogatories to a juryman was discretional.

Error was assigned with regard to the proof of the death of the alleged victim. That the civil registry is not the sole means of proving a death was the effect of our decision in *People* v. *Moreno,* 28 P. R. R. 100. The widow who was with her husband up to the moment of his death was a competent witness to prove the death.

Therefore the subsequent admission of an informal death certificate, if error at all, was harmless.

The appellant made a dragnet assignment of error in regard to leading questions to which he objected and excepted. Each error should be specially set forth. Appellant discussed but one alleged infraction.

Leading questions are in the discretion of the court and the appellant does not convince us that it was an abuse of discretion to ask an expert, a physician: "Is a man likely

to die of scpticemia?'' This alleged error without specification of the leading question was number seven.

The ninth count in the assignment sets forth that the court erred in permitting in the trial of Juan Ibern de Santiago a revolver to be introduced, the said revolver being the same that was identified and admitted by the court in the trial for the same crime against Juan de Gracia, who is a person distinct from Juan Ibern Santiago, and without such revolver, as proof, having any connection with the defendant.

The information in this case is as follows:

''June 9, 1921.—Upon this information the Grand Jury for the Judicial District of Aguadilla, P. R., charges Juan de Gracia, Juan Ibern Santiago and José Tormos with murder in the first degree, a felony, committed as follows: The said defendants Juan de Gracia and Juan Ibern Santiago, prior to the time of the filing of this information, or on or about the twenty-third day of April of the year 1921, in Progreso street of the city of Aguadilla, P. R., forming part of the Judicial District of the same name, then and there wilfully and illegally, with malice aforethought and with the express,' firm and deliberate intent to kill, each of them making use of a revolver, assaulted and battered Emilio Iglesias, inflicting upon him the following wounds: bullet wound in the left nostril; bullet wound in the right forearm; bullet wound in the left shoulder; bullet wound in the right leg; bullet wound in the right foot, and as a result of the wound in the right leg the said Emilio Iglesias died on May 8 of the current year in the ward of Santurce of the city of San Juan.

''The defendant José Tormos is a principal in the crime committed, inasmuch as he, with malice and premeditation, aided and abetted the said Juan de Gracia and Juan Ibern Santiago in the assault and battery committed by them on the person of Emilio Iglesias and was with them at the place and on the date set out in this information, being also armed with a revolver. All this being contrary to the Law in such case made and provided and against the peace and dignity of The People of Porto Rico. (Sd.) José J. Acosta y Acosta, District Attorney for the Judicial District of Aguadilla.''

So that defendants were charged in substance with having assaulted and battered with intent to kill Emilio Iglesias, each of the defendants making use of a revolver and producing a number of wounds, and that by reason of the wound in the right leg the said Iglesias died.

In criminal trials the phrase "a part of the *res gestae*" is frequently used to describe, not the main transaction or event, but something preliminary or subsequent thereto, Strictly speaking, the phrase covers the principal event as well. In this general sense the use of the pistol by Juan de Gracia was part of the *res gestae* described in the information, but more potently it was a part of the shooting and killing of Emilio Iglesias and as such a part of the main event. To prove his case as laid the *fiscal* was perhaps legally and morally bound to present to the jury all the instrumentalities that may have caused the death of Emilio Iglesias, but whether he was bound or not, he surely had the right.

In various jurisdictions questions have been raised when there are simultaneous shots aimed at the same person and only one shot is fatal, whether it is not necessary to show from whose pistol the fatal shot proceeded. In any event, if several pistols are being fired and one is produced clearly belonging to another person, such a fact is bound to favor rather than prejudice a defendant. It tends to help the theory that the fatal wound was not caused by defendant's pistol.

In *People* v. *Morine*, 72 Pac. 166, it was proved that the defendant struck deceased with an ax, and that, immediately thereafter, S. inflicted a mortal wound with a knife, which was conclusively proved to belong to S. and not to the defendant. The admission of evidence against defendant that on the day after the homicide S. came to witness's store and purchased a pocket-knife, was harmless.

The court did not see clearly the purpose of the testimony and thought the introduction of the knife was illogical on the facts of that case, but said that it was non-prejudicial error. The knife was also introduced at the trial. There seemed to be no question that the knife itself was admissible. But we hold in the present case not only that there was no prejudice but no error in introducing this pistol.

When this pistol was offered in evidence the defendant objected because he said the revolver belonged to another defendant and had no connection with himself. Thereupon the *fiscal* said: ''There are three persons accused and the proof has to be connected up with each of them; the witness has said that Juan de Gracia handed him this pistol and in this case various revolver shots have been spoken of and the *fiscal* has to present proof to identify the instrument with which these shots were made.'' In this way, although not perhaps in the most technical language, but nevertheless fundamentally, the *fiscal* stated the true rule applicable to this situation, namely, that when there are simultaneous shots fired at a person all the instrumentalities which were part of the *res gestae* in the literal sense are competent, relevant and admissible.

To visualize the legal situation: This was a prosecution against three persons who were charged with shooting at another simultaneously. Independently of all question of a common intent to kill, there was a common shooting. If the trials of the defendants had not been separate it would not have occurred to anyone to object to the introduction of this pistol. Despite the separation of trials the information continued to charge a common assault and battery; a common shooting, and the consequent death. The pistol offered, there was evidence tending to show, had played an important part in the common, simultaneous shooting. *People* v. *Mar Fow,* 168 Pac. 577 (District Court of Appeal,

California), was a case where the defendant and three others pursued another person firing at him, from which attack he died. The court said:

"In the present case there is much evidence from which the existence of a conspiracy between the defendant and his two companions to kill the deceased might justly be inferred, as for instance, that the defendant and his companions were acting together in their pursuit of the deceased, and that the murder occurred during the existence of and as part of a tong war between two associations of one of which the deceased was a member, and to the other of which the defendant—and presumably his companions—belonged; and that the defendant immediately after the killing fled to his tong's headquarters. But we think it is not necessary to rely on this principle of law to uphold the verdict and judgment, for we think the facts outlying as to the defendant's participation in the offense clearly amount to an aiding and abetting. The wound inflicted by the 32-caliber bullet was of so serious, although not necessarily fatal, character that the jury were entitled to infer that it had contributed to the death of the deceased. The common pursuit of the deceased by the three persons intent upon his murder was in itself aid of the most effective character one to the other, as much so, in our opinion, as if one of them had seized their fleeing victim and held him down while the other two killed him. The cases cited by the appellant from other jurisdictions which appear to take a different view of the character of the common action of two or more persons in a simultaneous attack upon another do not commend themselves to us as based on sound reasoning. We prefer to follow a case decided in our own courts. People v. Petruzo, 13 Cal. App. 569, 581, 110 Pac. 324, 329, in which it was said:

" 'It certainly would be a reproach to the law if it countenanced the doctrine that where A. and B. deliberately and unlawfully fire at C. with intention to kill him, and one shot takes effect causing his death, but it is uncertain whether A. or B. fired it, neither can be convicted of murder unless a conspiracy should be shown between them. In any rational view, each must be considered as aiding and abetting the other, and both responsible for the homicide.' "

Of course we are not considering the case of whether a man is guilty of murder who fires a shot simultaneously

with another and inflicts no fatal wound, but only the ques-
tion of the whether the *fiscal* has not the duty or the right to
put before the jury all the things or facts that may have
contributed to the death of a person.

However, we are strongly inclined to believe that the
direct and circumstantial evidence of this case, and perhaps
more particularly the latter, pointed to a common intent
existing between Juan de Gracia and Juan Ibern Santiago.
They were shown to have come from Bayamón the day be-
fore and to have been opposed to the establishment of a
factory which Emilio Iglesias was trying to set up in Agua-
dilla. The defendants were heard to exhort the workers
not to aid in opening the new factory. These two de-
fendants were together and fired simultaneously at Emilio
Iglesias. So far as this is circumstantial evidence it "need
not demonstrate the guilt of defendant beyond the pos-
sibility of his innocence, and if the circumstances as proved
produce a moral conviction to the exclusion of every
reasonable doubt they need not be absolutely incompatible
on any reasonable hypothesis with the innocence of accused.
In short, if all the material circumstances and evidence point
to guilt and exclude any reasonable hypothesis except that
of guilt; in other words, if they are inexplicable on the
theory of innocence, a conviction is warranted." 16 C. J.
765. A conspiracy may be proved by circumstances and
when the circumstances tend to prove a conspiracy it is for
the jury and not the court to determine the sufficiency to
prove that fact beyond a reasonable doubt. *People* v. *Mo-
rine,* 77 Pac. 777. There was evidence enough in this case
to submit to the jury the common intent of the defendants.

This being so and the theory of the *fiscal* being to a
large degree the proof of such common intent, there can
be no question that anything that anyone of the alleged
defendants did was admissible against the other. Perhaps

if the *fiscal* at the time of the motion for separate trials had insisted that he intended to prove common intent he might have successfully opposed the separation of these trials.

In this case witnesses who knew nothing about the shooting, and especially a chief of police, were allowed to testify. The theory was that these statements tended to prove the motives of the defendants because of a labor dispute and a change of factory in which the man killed and the defendant were concerned. The appellant does not satisfy us that error was committed.

The fourteenth assignment of error related to motions of various kinds to obtain a peremptory acquittal of defendant for lack of proof that Emilio Iglesias died because of his wound and other matters, but appellant does not argue the matter and there was evidence tending to prove the death from wounds and the other matters as hereinafter mentioned.

The others errors assigned relate to the sufficiency of the proof. Neither the appellant, as required by our rules, nor the *fiscal* has made a *resumé* of the facts of the case, but it appears that Emilio Iglesias died as a result of bullet wounds producing infection, and testimony that he received the bullet wounds and the infection was admitted without objection, and likewise there was expert testimony tending to show that despite efforts to save the injured man by means of amputations, the infection was the cause of the death. Indeed, the objections to the testimony of Dr. Igartúa, who was one of Iglesias' doctors, were only to the leading question. He was allowed to testify without objection that Iglesias had septicemia as a result of bullet wounds. The death was proved otherwise. The evidence, circumstantial if not otherwise, tended to show the death

from bullet wounds. Circumstantial evidence tended to show that defendant was one of a group firing shots and one witness testified that he saw defendant shoot. The motive was shown in the change of situs of the factory which Iglesias was attempting to push through and the defendant was one of the workers in the factory.

Finding no prejudicial error, the judgment must be

*Affirmed.*

Chief Justice Del Toro and Justice Aldrey concurred.
Mr. Justice Hutchison concurred in the judgment.
Mr. Justice Franco Soto took no part in the decision of this case.